**William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Bernard TOLKOW, Wayne Blasi, Arnold Brauer, Joseph Brownstein, Lawrence J. Cormier, Frank D'Isa, Steven R. Elliot, Stephen H. Gamp, Anthony P. Gallo, Charles Goldstein, Leonard Heller, Lester Horowitz, Howard Kleinberg, Howard Koeppel, Rocco Lacertosa, Martin Levi, George V. Lewisy, Jr., Anthony Maruo, Jules Overwalle, Shirley Podolsky, Marvin Raphael, Richard H. Shirk, Fred Vosselmann, Allan Weinberg, Defendants,**

**And**

**Amalgamated Local Union 355, an unincorporated labor association, Intervenor-Defendant.**

**No. 85 CV 1276.**

United States District Court, E.D. New York.

Dec. 23, 1985.

Francis X. Lilly, Sol. of Labor, U.S. Dept. of Labor (Albert H. Ross, Regional Sol., Robert J. Murphy, of counsel), Washington, D.C., Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y., for plaintiff.

D'Amato & Lynch, New York City (Robert E. Mehsel, Timothy Butler, of counsel), for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action brought for violation of fiduciary obligations under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* This motion is made by the "Trustee Defendants"—that is, all the defendants except Tolkow, Gamp, Gallo, and Amalgamated Local Union 355 ("the Local"). The Trustee Defendants seek a protective order pursuant to Fed.R.Civ.P. 26(c) staying all discovery in this case pending the outcome of any criminal actions that may be brought as a result of an investigation currently being conducted by the United States Department of Justice. For the reasons stated below, the motion is granted.

### Facts

The Trustee Defendants are trustees of the United Welfare Fund ("the Fund"), an employee benefit plan that covers the members of Amalgamated Local Union 355.

The complaint in this action was filed on April 4, 1985 and alleges, among other things, that the Trustee Defendants breached their fiduciary duties to the Fund and the Local in violation of various sections of ERISA.

In September 1985, grand jury subpoenas were served on the Fund and the Local by the Brooklyn Field Office of the United States Department of Justice Organized Crime and Racketeering Section. The subpoenas demanded the production of a variety of documents, including payroll records, lease agreements, correspondence, telephone records, investment agreements, and expense vouchers. The Trustee Defendants contend that the subpoenas reveal that the government is preparing to prosecute some or all of them under ERISA section 501, which authorizes criminal penalties for violations of ERISA.

Because the nature of the subpoena requests indicates that the criminal prosecution may be based on the same facts as the complaint in the instant case, the Trustee Defendants fear that any deposition testimony they give in this proceeding will be used against them in a criminal case. At the same time, they argue, repeated invocation of the fifth amendment right against self-incrimination will hamper their ability to defend the civil suit. They thus seek a protective order staying all discovery in this action until the completion of criminal proceedings against all Trustee Defendants who may be indicted as a result of the current investigation by the Organized Crime and Racketeering Section.

### Discussion

Any discussion of the implications of simultaneous civil and criminal proceedings must begin with *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). In that case a company and some of its officers were investigated by the Food and Drug Administration ("FDA").

Following the FDA's recommendation, the United States Attorney brought an in rem action seeking the civil seizure of certain products. Before the company had answered interrogatories in connection with that suit, the FDA notified the company that it was contemplating a criminal proceeding against it for the same violations. The company's request for a stay of the civil case, or at least the civil discovery, was denied. The answers to the interrogatories were available to the government when it sought an indictment, and the officers were subsequently convicted.

The case reached the Supreme Court on appeal from the criminal convictions. The officers argued that the use of civil discovery to obtain information useful to the government in the criminal case violated the fifth amendment. The Court disagreed. It began by noting that the corporation, to which the interrogatories were addressed, had itself no self-incrimination privilege, and that it was obliged to appoint an agent who could answer the interrogatories without fear of self-incrimination. *Id.* at 8, 90 S.Ct. at 767. To allow the corporation to avoid responding to the interrogatories by invoking the self-incrimination privilege of the individual officers would " 'secure for the corporation the benefits of a privilege it does not have.' " [1] *Id.* at 8, 90 S.Ct. at 767 (quoting *United States v. 3963 Bottles ... of ... "Enerjol Double Strength"*, 265 F.2d 332, 335–36 (7th Cir.), *cert. denied*, 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544 (1959)).

Nor was the Court persuaded that the course pursued by the government violated due process. There was no indication of bad motive on the part of the government, and in the absence of special circumstances—such as lack of notice of the possible criminal prosecution—there was nothing "that might suggest that unconstitutionality or even the impropriety" of the govern-

---

**1.** The Court also noted that in moving on behalf of the corporation for the stay of civil discovery, counsel had nowhere asserted a claim of fifth amendment privilege with respect to the individual officers. *See United States v. Kordel*, 397 U.S. 1, 5, 90 S.Ct. 763, 765, 25 L.Ed.2d 1 (1970). He had simply argued that it would be unfair to allow the government "to obtain proof of [criminal] violations through the use of civil discovery procedures." *Id.*

ment's conduct. *Id.* at 12, 90 S.Ct. at 770. Any other result would mean that whenever the government took discovery of a corporation during the course of civil proceedings, its officers would be immunized from subsequent criminal prosecution. *Id.* at 12–13, 90 S.Ct. at 769–70. This would be particularly unfortunate in light of the important public interests protected by the Food, Drug, and Cosmetic Act and the fact that often the government cannot make a rational decision to pursue a criminal action until after the offending products have been seized civilly. *Id.* at 11, 90 S.Ct. at 769. "It would stultify enforcement of federal law to require a governmental agency ... invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *Id.* (footnote omitted). Accordingly, the Supreme Court refused to overturn the convictions.

*Kordel* thus holds that criminal convictions that may have been based on evidence obtained by the government in a civil proceeding are not constitutionally infirm. Subsequent cases have made even clearer that it is not unconstitutional to force a litigant to choose between invoking the fifth amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 318–19, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *United States v. White*, 589 F.2d 1283, 1286–87 (5th Cir. 1979); *Arthurs v. Stern*, 560 F.2d 477, 478–79 (1st Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *United States v. Rubinson*, 543 F.2d 951, 961 (2d Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976).

■■■■ Plaintiff here is, therefore, quite right that defendants' constitutional rights will not be impaired by the denial of a stay.

"Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[ ] to require such action ...'" *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir.) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970)), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). In other words, the Court in a civil case may exercise its discretion so that a defendant need not find himself in the position in which the *Kordel* and *Baxter* Courts have said he may constitutionally be put.

■■■■ A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter, *id.* at 1375–76, and is even more appropriate when both actions are brought by the government.

> The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it. *See, e.g., United States v. Henry*, 491 F.2d 702 (6th Cir.1974); *Texaco Inc. v. Borda*, 383 F.2d 607, 608–09 (3d Cir.1967); *Silver v. McCamey*, 221 F.2d 873, 874–75 (D.C.Cir.1955).

*Id.* at 1376 (footnotes omitted).

■■■■ Before considering the public interest at issue here, I note that the Trustee Defendants do not seek a stay of the entire civil case. Rather, they ask only that discovery therein be deferred pending the outcome of the criminal investigation;[2] in all

---

**2.** The fact that an indictment has not yet been returned—while it may be a factor counseling against a stay of civil proceedings—does not make consideration of the stay motion any less appropriate. Several of the cases dealing with

this issue have involved pre-indictment criminal inquiries. *See United States v. Kordel*, 397 U.S. 1, 4, 90 S.Ct. 763, 765, 25 L.Ed.2d 1 (1970) (district court considered motion for stay while FDA was contemplating prosecution but before

other respects the civil case will go forward. *See id.* at 1376; *Gordon v. Federal Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir.1970). Indeed, the *Kordel* Court suggested this limited approach when no one to whom the civil discovery request is addressed can answer "without subjecting himself to a 'real and appreciable' risk of self-incrimination." 397 U.S. at 8–9, 90 S.Ct. at 768.

■ Here a stay of discovery would cause no serious damage to the public interest. ERISA is clearly an important remedial statute and its standards for fiduciaries provide fundamental protection for employees covered by pension or welfare plans. While this case alleges serious violations of ERISA, there is no allegation that, for example, plan beneficiaries are not receiving benefits to which they are currently entitled.

Possible mismanagement of a pension fund simply does not present the same danger to the public interest as violations that other courts have found to warrant denial of a motion for a stay. In *Securities & Exchange Commission v. Dresser Industries*, for example, a stay of the civil action pending the outcome of a grand jury investigation was denied on the ground that it might permit the "[d]issemination of false or misleading information by companies to members of the investing public." 628 F.2d at 1377. The FDA in *Kordel* was attempting to prevent the distribution of misbranded drugs. *See* 397 U.S. at 11, 90 S.Ct. at 769. These cases, unlike the present one, involve a tangible threat of immediate and serious harm to the public at large. While the allegations in this case are indeed serious, there is no indication that plan beneficiaries are suffering or will suffer any irreparable injury if civil discovery is stayed. *See Gordon v. Federal Deposit Ins. Co., supra,* 427 F.2d at 580 ("Here ... the government's need for civil relief, which involves merely the collection of money, is not as strong as that in *Kordel* ...")

The government does not point to any evidence that might be lost if civil discovery is stayed. Moreover, the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues. *Texaco, Inc. v. Borda,* 383 F.2d 607, 609 (3d Cir.1967).

■ The propriety of a stay becomes manifest when the public interests are weighed against the protection that a stay will afford the defendants. If the defendants are served with interrogatories in the civil case, they must decide whether to respond or to assert their rights under the fifth amendment. If they choose the former course, they risk providing the government with leads or evidence that may be used against them in the criminal case. If they choose the latter course, they greatly increase the chance that they be found liable in civil case for substantial sums of money. A stay of civil discovery until after criminal proceedings are complete will enable them to defend the civil case vigorously without fear of subsequent prosecution.[3]

■ Concededly, it does not offend the Constitution if a defendant in a civil case is asked questions the answers to which might incriminate him. But even if the defendant's dilemma does not violate the fifth amendment or due process, it certainly undercuts the protections of those provisions, and a Court can exercise its discretion to enable a defendant to avoid this unpalatable choice when to do so would not

---

any criminal proceeding had been instituted); *SEC v. Dresser Indus.,* 628 F.2d 1368, 1371–74 (D.C.Cir.) (defendant sought injunction of civil proceeding pending outcome of grand jury investigation), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *Gellis v. Casey,* 338 F.Supp. 651, 652 (S.D.N.Y.1972) (defendant sought to enjoin administrative investigation be-

cause United States Attorney was considering presenting the case to the grand jury).

3. A decision to stay civil discovery does not require a finding of bad faith on the part of the authorities bringing either the civil or criminal case, and indeed here there is no question that the government has conducted itself properly in every respect.

seriously hamper the public interest.[4] "While a stay ... may cause some inconvenience and delay to the [government], 'protection of defendant[s'] constitutional rights against self-incrimination is the more important consideration.'" *Corbin v. Federal Deposit Ins. Corp.*, 74 F.R.D. 147, 149–50 (E.D.N.Y.1977) (quoting *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y. 1970)).

I note that while criminal investigations and prosecutions can take a woefully long time, a stay of discovery does not mean that enforcement of the public interests at stake in the civil case will be indefinitely deferred. For one thing, a criminal prosecution serves to enforce those same interests. In addition, defendant is free to petition this Court to lift or modify the stay should there be change in circumstances that would warrant such action.

In summary, I conclude that in this case the risk of harm to the public interest in correcting improprieties in the management of employee benefit plans does not outweigh the distinct possibility that defendants will be unable to defend both actions to the fullest. Accordingly, all discovery in this action is hereby stayed pending the outcome of the current investigation of the Organized Crime and Racketeering Section.

SO ORDERED.

---

**4.** The cases cited by the defendant are not to the contrary. In *United States v. Simon*, 373 F.2d 649 (2d Cir.), *vacated as moot*, 389 U.S. 425, 88 S.Ct. 577, 19 L.Ed.2d 653 (1967), the Court held that the judge in a criminal case could not order the stay of discovery in a civil case pending in another court. *Gellis v. Casey*, 338 F.Supp. 651 (S.D.N.Y.1972) stands for the proposition that a defendant called upon in an administrative hearing to give testimony that might lead to criminal charges is not entitled to a preliminary injunction enjoining the hearing. In that case it was uncertain both whether invocation of the fifth amendment would lead to liability in the civil case and whether criminal charges would ever be brought. Accordingly, the Court found that there had been an insufficient showing of irreparable harm to warrant an injunction. Neither of these cases limits or even addresses a district court's power to order a stay of discovery in a civil case pending before it.