**UNITED STATES of America, Plaintiff,**

v.

**PRIVATE SANITATION INDUSTRY ASSOCIATION OF NASSAU/SUFFOLK, INC., et al., Defendants.**

No. CV–89–1848.

United States District Court, E.D. New York.

Oct. 20, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Joseph D. McCann, Paul Weinstein, Jody Kasten, Asst. U.S. Attys., of counsel), Brooklyn, NY, for plaintiff.

Brian D. Linder, Gallop, Dawson, Clayman & Rosenberg, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff United States moves for partial summary judgment against defendant Salvatore Avellino. Defendant Avellino cross-moves to stay these civil proceedings during the pendency of two grand jury investigations and, alternatively, if his motion to stay is denied, an extension of time to respond to the plaintiff's summary judgment motion. For the reasons stated below, Avellino's motion to stay is denied; he is granted 20 days from the date of this order to file and serve a response to the government's summary judgment motion; and oral argument on the government's motion will be scheduled thereafter.

## FACTS

The United States commenced this civil RICO action against 112 defendants, alleging that they engaged in a pattern of racketeering activity by committing illegal acts and by using force and threatening to use force against other individuals with respect to the collection of solid waste on Long Island. The underlying facts and the identities of the various defendants are set out in this Court's Memorandum and Order, dated June 29, 1992, 793 F.Supp. 1114, familiarity with which is assumed.

For purposes of this motion, the relevant facts are as follows. Salvatore Avellino ("Avellino") is a principal and/or hidden owner in two corporate co-defendants in

this action: Salem Carting Company ("Salem") and SCC Holding Corp. Declaration of Donald McCormick in Support of Plaintiff's Motion for Partial Summary Judgment at ¶ 43 ("McCormick Declaration"). Avellino is also a reputed caporegime in the Lucchese crime family. In that capacity, Avellino is reputed to be in charge of controlling the collection of trade waste in Long Island. It is alleged that he collects extortion payments and tribute from numerous businesses to be divided between the Lucchese and Gambino crime families. The Gambino family receives an equal share of those illegal proceeds because it controls the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Private Sanitation Local 813 ("Local 813")—the union that represents workers employed by companies engaged in the solid waste industry on Long Island. To control the Long Island solid waste industry, Avellino uses, and threatens to use, force against rebel carters, who vie for business in the competitive free market; persuades potential competitors not to bid on certain jobs; and bribes public and union officials in order to ensure continued control of the waste collection industry.

Avellino has been involved in many judicial proceedings involving these activities. In 1985, the State of New York commenced a civil antitrust action against Avellino and others on behalf of itself and numerous local governments and as *parens patriae* on behalf of all citizens who paid for rubbish removal on Long Island. *State of New York v. Salem Sanitary Carting Corp.*, CV–85–0208 (E.D.N.Y.1985) (Glasser, J.). In December 1991, Avellino agreed to pay compensatory damages to the represented class in the amount of $231,000; on April 24, 1992, this Court approved a final settlement in that case, enjoining Avellino from entering into or enforcing any conspiracy in restraint of trade for the sale of private garbage collection services, granting access to New York

State to inspect certain contracts for five years, and permitting state investigators to inspect the corporate records of Salem, to conduct interviews, and to propound interrogatories. Affidavit of Brian Linder in Support of Defendant Avellino's Motion to Stay at ¶¶ 6–7 ("Linder Affidavit").

Similarly, in 1984 Avellino was charged in separate indictments by state grand juries in Suffolk County, *inter alia*, for coercing, conspiring, and violating New York antitrust laws [1] and for conspiring to bribe three Town of Huntington, Long Island, officials to receive favorable rate increases for private haulers of solid waste. On October 17, 1986, Avellino pleaded guilty to the crime charged of coercion in the first degree in violation of New York Penal Law § 135.65(1) (McKinney 1987), a class D felony. Transcript of October 17, 1986 plea allocution in New York State County Court, Suffolk County ("Plea Transcript") at pp. 7–8, 14–15 (Exhibit 8 to McCormick Declaration). Avellino stated:

> Between on or about December 1981 and October 1983, in the County of Suffolk, I, Salvatore Avellino, intentionally and knowingly violated the law by inducing Robert Kubecka and Jerome Kubecka from refraining from bidding for and soliciting certain carting customers by instilling in the Kubeckas' a fear that I would damage the Kubeckas' property.

McCormick Declaration at ¶¶ 41–42; Plea Transcript at p. 15. Likewise, Avellino also pleaded guilty to the crime charged of conspiracy in the fifth degree in violation of New York Penal Law § 105.05 (McKinney 1987), a class A misdemeanor, by conspiring to commit the felony of second degree bribery. McCormick Declaration at ¶ 57; Plea Transcript at pp. 7–8, 17–19. Avellino stated:

> Between on or about August, 1982 through on or about December, 1983, in the County of Suffolk, I, Salvatore Avellino, with the intent that conduct constituting bribery in the second degree be

---

1. Salem was also charged in the first indictment for violating New York antitrust laws; Salem pleaded guilty to attempted coercion in the second degree on the indictment. Transcript of October 17, 1986 plea allocution in New York State County Court, Suffolk County at pp. 7–8, 16–17 (Exhibit 8 McCormick Declaration).

performed, ... agreed to confer a benefit, to wit: Political contributions upon Anthony [sic] Romersa and Vito Biondi, public servants, upon the understanding that their vote, opinion and action would be influenced as public servants.

McCormick Declaration at ¶ 57; Plea Transcript at p. 18.

The government now moves for partial summary judgment against Avellino contending that there are no genuine factual issues in dispute to preclude granting that motion as a matter of law because all the requisite elements of civil RICO liability have been established by Avellino's guilty pleas, the testimony of various government informants in the course of other proceedings, and through transcripts of intercepted communications involving Avellino and others. In addition, the government seeks injunctive relief and disgorgement of profits against Avellino.

In lieu of submitting affidavits in opposition to the government's partial summary judgment motion, defendant Avellino cross-moves to stay this civil action while two grand jury investigations in the Eastern District of New York are pending, and, alternatively, if that motion to stay is denied, additional time to respond to the government's motion. In support of his motion to stay, Avellino submits subpoenas from the two grand juries. He also speculates that a Suffolk County grand jury may also be investigating his role in the murder of Robert Kubecka, a rebel carter in Long Island.

## DISCUSSION

This motion to stay civil proceedings pending the outcome of the ongoing grand jury investigations is premised on the ground that defendant Avellino will have to choose between opposing the government's summary judgment motion or asserting his

Fifth Amendment privilege against self-incrimination.

 "A federal district court has the inherent power, in the exercise of its discretion, to stay an action." *John's Insulation, Inc. v. Siska Constr. Co.,* 671 F.Supp. 289, 297 (S.D.N.Y.1987) (citing *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). Granting a stay of a civil proceeding to await the outcome of a pending parallel criminal investigation is appropriate " 'when the interests of justice seem ... to require such action.' " *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) (quoting *United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970)). In making this determination, the court should balance:

(1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; (5) the public interest.

*Arden Way Assocs. v. Boesky,* 660 F.Supp. 1494, 1497 (S.D.N.Y.1987); *see also* Milton Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 203–04 (1989).

*Motion to Stay*

 As a preliminary matter, since Avellino has yet to be indicted by any grand jury, his motion to stay may be denied on that ground alone. Pre-indictment requests for a stay of civil proceedings are generally denied. *See, e.g., United States v. District Council of New York City,* 782 F.Supp. 920, 925 (S.D.N.Y.1992) (collecting cases); *In re Par Pharmaceutical, Inc. Securities Litigation,* 133 F.R.D. 12, 14 (S.D.N.Y.1990) (collecting cases);[2] *see also S.E.C. v. Dresser Indus., Inc.,* 628

---

**2.** The Second Circuit's opinion in *Kashi v. Gratsos,* 790 F.2d 1050 (2d Cir.1986) is not to the contrary. In *Kashi,* the lower court granted a pre-indictment stay of a civil conspiracy trial until the United States Attorney's office declared that it declined to prosecute. *Id.* at 1057. The issue on appeal was whether the district court abused its discretion in refusing to grant the

stay until the expiration of the statute of limitations on the underlying offense. *Id.* In affirming the lower court, the Court refused to find an abuse of discretion as to the length of the stay, *id.,* but never addressed the appropriateness of a pre-indictment stay in the first instance. *Par Pharmaceutical,* 133 F.R.D. at 14 n. 3.

F.2d 1368, 1376 (D.C.Cir.1980) (where no indictment has issued, the purpose of staying civil proceedings during pending criminal proceedings is "a far weaker one") (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Therefore, Avellino is not entitled to a pre-indictment stay of this civil Rico action.

Defendant Avellino cites two cases for the proposition that a pre-indictment stay of this civil action is warranted. However, neither of those cases compels the conclusion that this Court dissent from the general rule that "the Constitution ... does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings...." *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) (quoting *Dresser,* 628 F.2d at 1372).

Avellino first cites *United States v. Certain Real Property Known as 1344 Ridge Rd.,* 751 F.Supp. 1060 (E.D.N.Y.1989), where this Court stayed discovery in a civil forfeiture action against the claimants of the property where they argued that they would be forced to invoke their Fifth Amendment privilege to avoid prejudicing their rights in an anticipated criminal proceeding. However, in that case, one of the two claimants had already been indicted before the commencement of the forfeiture action, making it appropriate to stay the action even against the unindicted co-defendant. *See id.* at 1063; *United States v. Certain Real Property Known as 63–29 Trimble Rd.,* 812 F.Supp. 332, 334 (E.D.N.Y.1992) (Glasser, J.) (distinguishing *1344 Ridge Rd.* because it "involved [a] claimant[ ] against whom criminal charges were pending at the time the stay was granted").

A more relevant case cited by defendant is *Brock v. Tolkow,* 109 F.R.D. 116 (E.D.N.Y.1985). In *Brock,* trustees of an employment benefits plan sought pre-indictment stay of discovery in civil proceeding where they were potentially subject to both civil and criminal liability under ERISA. *Id.* at 117–18. The defendant trustees argued that they were facing a Hobson's choice of (1) repeatedly asserting their Fifth Amendment privilege and failing to defend the civil action or (2) defending the civil action with the likelihood of self-incrimination in a later criminal case. *Id.* at 118.

In granting the pre-indictment stay, the court noted that a stay is most appropriate where the subject matter of the parallel civil and criminal proceeding or investigation is the same and where the government is prosecuting both proceedings. *Id.* at 119 & n. 2 (citing *Dresser,* 628 F.2d at 1375–76). The *Brock* court then proceeded to weigh the public and private interests involved and determined that a stay was appropriate. The court noted that

> "a stay of discovery would cause no serious damage to the public interest ... [because] [p]ossible mismanagement of a pension fund simply does not present the same danger to the public interest as violations that ... warrant denial of a motion for a stay ... involv[ing] a tangible threat of immediate and serious harm to the public at large."[3]

*Id.* at 120.

In contrast, the *Brock* court noted the potential quandary that the defendants would face if discovery proceeded. The court stated:

> If the defendants are served with interrogatories in the civil case, they must decide whether to respond or to assert their rights under the fifth amendment. If they choose the former, they risk providing the government with leads or evidence that may be used against them in the criminal case. If they choose the latter course, they greatly increase the chance that they be found liable in [the] civil case for substantial sums of money.

*Id.* at 120. Therefore, notwithstanding that the defendants' "unpalatable choice" was "concededly" not offensive to the Constitution, the court exercised its discretion and stayed discovery because "to do so

---

**3.** The court identified two examples of increased public interest: the distribution of misbranded drugs, *Kordel,* 397 U.S. at 11, 90 S.Ct. at 769, and the "[d]issemination of false or misleading financial information to the investing public." *Dresser,* 628 F.2d at 1377.

would not seriously hamper the public interest." *Id.* at 120–21.

In this case, even if this Court were to follow *Brock*, which it declines to do, a preindictment stay is unwarranted once one weighs the various interests involved—the government's interest, the interest of nonparties, and the public interest—against the interest of, and burden on, defendant Avellino. This is particularly so based upon his conduct in this proceeding and earlier proceedings involving allegations of corruption in the solid waste industry on Long Island.

First, the interests of the government, individuals and corporations that are not parties to this action, and the public at large, in a speedy resolution of this civil action are manifest. In supporting its motion for summary judgment against Avellino, the government aptly demonstrates the toll that corruption in the solid waste industry has exacted on Long Island residents and corporations. According to a study conducted at the behest of the Rand Corp., Long Island consumers are paying 50% higher rates for commercial garbage collection and 15% higher rates for residential collection by virtue of the collusive bidding and anti-competitiveness in that industry. *See* Reuter, *Racketeering in Legitimate Industries: A Study in the Economics of Intimidation*, RAND Corp. (1987), at pp. 48–51 (Exhibit 5 to McCormick Declaration). Thus, all Long Island consumers have a substantial economic interest in seeing that the solid waste industry be rid of corruption.

Similarly, the government maintains approximately 200 facilities on Long Island that are affected by the artificial rate increases in commercial garbage collection. Thus, the government has a proprietary interest in the speedy and just resolution of this civil RICO case.

■ Avellino's countervailing interest in avoiding the use of his Fifth Amendment privilege, as well as any burden he faces if his motion to stay is denied, is minimal. First, as the court itself noted in *Brock*, forcing a defendant to assert his or her privilege in a civil action is constitutional.

109 F.R.D. at 120; *see also Arden Way Assocs. v. Boesky*, 660 F.Supp. 1494, 1498 (S.D.N.Y.1987) (denying stay on same ground because the prosecution may constitutionally draw an adverse inference where the privilege is invoked in a civil case under *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)); *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1118–19 (S.D.N.Y.1980) (denying stay of discovery where defendant sought to avoid invocation of Fifth Amendment privilege). Furthermore, because the government may commence and prosecute parallel civil and criminal proceedings, any interest of Avellino in preventing such parallel prosecutions is diminished. As the Supreme Court stated in *United States v. Kordel:*

> It would stultify enforcement of federal law to require a governmental agency ... invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.

397 U.S. 1, 11, 90 S.Ct. 763, 769, 25 L.Ed.2d 1 (1970). Thus, Avellino's interest in staying this case is, at best, nominal.

Moreover, the record belies the fact that Avellino will even be prejudiced should he be compelled to invoke the privilege in opposition to the government's motion. Avellino has continually invoked the Fifth Amendment privilege in responding to the government's interrogatories in this case and in answering questions during his deposition in an earlier proceeding, *State of New York v. Salem Sanitary Carting*, CV–85–0208 (E.D.N.Y.1985) (Glasser, J.). Declaration of Joseph D. McCann in Support of Plaintiff's Partial Summary Judgment Motion at ¶ 3. Thus, it is disingenuous for Avellino to now argue that he will be prejudiced by exercising the privilege which he has repeatedly invoked in the past.

Avellino's felt need to invoke the privilege may inhibit his effective opposition to the government's summary judgment motion, but that consequence is not unprecedented. *See, e.g., F.S.L.I.C. v. Molinaro,*

889 F.2d 899, 901–903 (9th Cir.1989) (simultaneously denying one defendant's renewed motion to stay civil proceedings and granting government's partial summary judgment motion against that defendant despite failure to file counter-affidavits because of an ongoing grand jury investigation); *but see Vardi Trading Co. v. Overseas Diamond Corp.*, 1987 WL 17662, at *2 (S.D.N.Y.1987) (where civil case and criminal case required that defendant take contradictory positions, court stayed civil action after issuance of information in Florida and denied plaintiff's summary judgment motion for it would lead to default). Therefore, a balancing of the competing interests involved militates against granting Avellino a stay of this proceeding.

■ Finally, convenience of the courts is best served when motions to stay proceedings are discouraged. The courts must be mindful that "a policy of issuing stays 'solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration.'" *Arden Way Assocs.*, 660 F.Supp. at 1497 (quoting *Paine, Webber*, 486 F.Supp. at 1119). After considering the five criteria for informing the Court's judgment in determining whether a stay is appropriate, this Court is drawn to conclude that defendant Avellino's motion should be denied.

For all the foregoing reasons, Avellino's motion for a stay is denied. He is hereby granted 20 days from the date of this order to file and serve a response to the motion for partial summary judgment.

SO ORDERED.