
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 OCT 30 PM 12: 22

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SANDRA LYNN SMITH, | ) | No. 76247-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| JOSHUA THADDEUS SMITH, | ) | |
| Appellant. | ) | FILED: October 30, 2017 |

LEACH, J. — The mere pendency of parallel civil and criminal cases does not entitle the defendant to a stay of the civil case. Instead, a trial court considering a stay request must consider and balance the eight factors identified by this court in King v. Olympic Pipe Line Co.[1]

Joshua Smith appeals a one-year domestic violence protection order (DVPO). Joshua[2] contends that the trial court abused its discretion and violated his due process rights by entering the protection order before his parallel criminal case was resolved. Because the trial court reasonably concluded that the Olympic Pipe Line factors weighed against granting a stay, it did not abuse its discretion by entering the order. Following controlling precedent, we reject Joshua's due process claims and affirm.

---

[1] 104 Wn. App. 338, 16 P.3d 45 (2000).
[2] Because Joshua Smith and Sandra Smith share a surname, we refer to them by their first names for clarity.

No. 76247-8-I / 2

## FACTS

On November 16, 2015, the State charged Joshua Thaddeus Smith with multiple counts of rape of a child involving his wife's daughter. In March 2016, Sandra Lynn Smith, Joshua's wife, reported to the police that Joshua had asked her to give false testimony in his criminal case. The police arrested Joshua for tampering with a witness. Sandra, acting pro se, filed a petition seeking a DVPO against him, stating that she was "scared he will retaliate against me." The trial court issued a temporary protection order and notice of hearing the same day.

In her petition, Sandra explains that Joshua has an "explosive temper" and has "slammed" their son into the wall and spanked their daughter "to the point that she couldn't sit." Sandra states that Joshua would yell and belittle her and throw things so that she was fearful he would hurt her or their children. She describes the extent of control Joshua exercised over her: Joshua monitored her Facebook account and would deny her permission to go the doctor so that she felt like she was "constantly walking on eggshells around him." One night, Joshua told Sandra that "he was trying to decide if he was still going to be alive in the morning."

In March 2016, Joshua asked the court to continue the protection order hearing, primarily because of the criminal allegations pending against him. The court granted this request over Sandra's objection. In September 2016, after the

-2-

court had granted three continuances at Joshua's request,[3] Sandra obtained pro bono counsel. To further support her protection order request, she filed a police report that included her daughter's description of abuse. Her daughter claimed that Joshua started sexually abusing her when she was 8 years old and continued until she was 15. She said that a few weeks before she told everyone about the abuse, Joshua warned her that if she told anyone he would "get his gun, shoot the whole family, and then he would kill himself." Sandra claimed that Joshua had told her he had sexually molested a member of the family.

On September 28, 2016, Joshua requested a fourth continuance because his criminal case remained pending. Sandra opposed this request. A superior court commissioner did an on-the-record balancing of the interests involved, as required by Olympic Pipe Line. She found that the infringement on Joshua's Fifth Amendment rights outweighed Sandra's interests in proceeding expeditiously. She granted a continuance two weeks beyond the trial date for Joshua's criminal matter. But the commissioner explained that if Joshua asked for another continuance in his criminal case, the prejudice to Sandra caused by more delay

---

[3] Sandra requested a 2-week continuance on April 21, 2016, due to a medical emergency. During that same proceeding, Joshua requested that the court extend the continuance to 60 days. Sandra opposed the longer continuance because she felt that Joshua was continuing to "control" and "manipulate" her. The court granted a 60-day continuance over Sandra's objection, which was the second continuance the court granted at Joshua's request.

would outweigh any infringement on his Fifth Amendment privilege. She stated, "I can't provide that he can continuously continue his criminal case at his own request and then stymie her right indefinitely to a hearing on the merits."

The following day, Sandra filed a request to revise the commissioner's order. The revision judge denied this request and adopted the commissioner's rationale, finding of facts, and conclusions of law. He scheduled a hearing on the merits of the protection order request for November 21, 2016. This date was not to be continued unless Sandra requested a continuance or the State obtained a trial continuance in the criminal matter over Joshua's objection.

On November 21, 2016, Joshua requested a fifth continuance in the DVPO matter because his trial had been continued to March of 2017. A commissioner found that the revision order was binding. He decided that although Joshua's trial date had been continued, the conditions established in the revision order for any further continuances had not been met and denied Joshua's request. The commissioner then held a hearing on the protection order request. He considered Sandra's evidence supporting the order. Joshua declined to present any evidence. The commissioner found that Sandra had established by a preponderance of the evidence that Joshua had committed domestic violence and issued a one-year protection order protecting Sandra and her children. Joshua appeals.

-4-

No. 76247-8-I / 5

## ANALYSIS

We start with the proposition that a defendant has no absolute right to avoid choosing between testifying in a civil matter and asserting his Fifth Amendment privilege.[4]

### I. The Olympic Pipe Line Test

Joshua contends that the trial court abused its discretion in granting a one-year protection order while his parallel criminal matter was pending. We disagree. A court exercises discretion when deciding a request to stay proceedings.[5] We review a court's decision for abuse of that discretion.[6] "A trial court abuses its discretion only if its ruling is manifestly unreasonable or is based upon untenable grounds or reasons."[7]

In Olympic Pipe Line, this court held that the trial court must conduct an on-the-record balancing of eight nonexclusive factors before granting or denying a motion to stay the civil proceeding when parallel criminal proceedings are pending.[8] We will overturn the trial court's decision only if it has abused its discretion. The eight factors are (1) the extent to which a defendant's Fifth Amendment rights are implicated, (2) the similarities between the civil and criminal cases, (3) the status of the criminal case, (4) the interest of the plaintiffs

---

[4] Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir. 1995).
[5] Olympic Pipe Line, 104 Wn. App. at 348.
[6] Olympic Pipe Line, 104 Wn. App. at 348.
[7] Olympic Pipe Line, 104 Wn. App. at 348.
[8] Olympic Pipe Line, 104 Wn. App. at 352-53.

-5-

in proceeding expeditiously and the potential prejudice to plaintiffs of delay, (5) the burden which any particular aspect of the proceeding may impose on the defendants, (6) the convenience of the court in the management of its cases and the efficient use of judicial resources, (7) the interests of persons not parties to the civil litigation, and (8) the interest of the public in the pending civil and criminal litigation.[9]

We address each factor in turn.

### 1. The Extent to Which a Defendant's Fifth Amendment Rights Are Implicated

Joshua asserts that the substantial extent to which his Fifth Amendment right against self-incrimination is implicated weighs heavily in favor of granting a stay and outweighs any countervailing factors. Once a witness in a civil suit has invoked his Fifth Amendment privilege, the trier of fact is entitled to draw an adverse inference from his refusal to testify.[10] The extent to which a party's right against self-incrimination is implicated in civil proceedings is not determinative, but it must be given "'serious consideration' in the balancing of interests."[11]

Here, the State criminally charged Joshua with conduct similar to that alleged in Sandra's petition. The allegations in both proceedings involve domestic violence. He therefore asserts that his Fifth Amendment rights are

---

[9] Olympic Pipe Line, 104 Wn. App. at 352-53.
[10] Ikeda v. Curtis, 43 Wn.2d 449, 458, 261 P.2d 684 (1953).
[11] Olympic Pipe Line, 104 Wn. App. at 353 (quoting White v. Mapco Gas Prods., Inc., 116 F.R.D. 498, 502 (E.D. Ark. 1987)).

directly at issue. Joshua contends that he must choose between waiving his Fifth Amendment privilege and being unable to defend himself in the DVPO proceedings. The extent to which his Fifth Amendment rights are seemingly implicated would therefore weigh in strong favor of a stay. In granting a fourth continuance at Joshua's request, the trial court accordingly found that the civil proceedings "squarely implicate" his Fifth Amendment rights.

Yet, Sandra was seeking a DVPO under the Domestic Violence Prevention Act (DVPA).[12] The process created by the DVPA burdens the defendant's Fifth Amendment privilege substantially less than do other civil proceedings. DVPO proceedings are "special proceedings," which means that rules of civil procedure established by the legislature for DVPOs supersede inconsistent civil court rules.[13] For example, the rules of evidence do not apply in DVPO proceedings.[14]

Also, in DVPO proceedings parties do not have a right to a jury trial,[15] to discovery,[16] to compel live testimony, or to cross-examine witnesses.[17] Although

---

[12] Ch. 26.50 RCW.
[13] CR 81 states, in part, that civil court rules govern all civil proceedings "[e]xcept where inconsistent with rules or statutes applicable to special proceedings"; see also Scheib v. Crosby, 160 Wn. App. 345, 351, 249 P.3d 184 (2011).
[14] ER 1101(c)(4); see also Gourley v. Gourley, 158 Wn.2d 460, 466-67, 145 P.3d 1185 (2006).
[15] Blackmon v. Blackmon, 155 Wn. App. 715, 721-22, 230 P.3d 233 (2010).
[16] Scheib, 160 Wn. App. at 352.
[17] Aiken v. Aiken, 187 Wn.2d 491, 500-01, 387 P.3d 680 (2017).

the trial court has the discretion to allow discovery,[18] live testimony, and cross-examination,[19] DVPO hearings are "equitable in nature and may be properly determined by a court on documentary evidence alone."[20]

Thus, the plaintiff cannot compel evidence or testimony, which means DVPO proceedings burden a defendant's Fifth Amendment rights substantially less than do other civil proceedings. Because the burden of proof is on the plaintiff,[21] the defendant can prevail by showing that the burden has not been met without providing incriminating testimony. The defendant does not need to testify in the proceedings. Unless the court permits live testimony and cross-examination or discovery, which did not occur in this case, the defendant need not invoke his Fifth Amendment right in DVPO proceedings. The fact finder is therefore unable to infer prejudice, and the defendant need not necessarily choose between waiving his Fifth Amendment right and defending himself in the civil proceedings. Thus, a court could reasonably decide that the extent to which these DVPO proceedings implicate Joshua's Fifth Amendment privilege does not provide a persuasive justification for a stay.

---

[18] Scheib, 160 Wn. App. at 352.
[19] Aiken, 187 Wn.2d at 500-01.
[20] Blackmon, 155 Wn. App. at 723.
[21] RCW 26.50.020(1)(a), .030.

## 2. Similarities between the Civil and Criminal Cases

Joshua maintains that the fact he is being criminally charged with conduct that is either the same or similar to that alleged in Sandra's petition weighs in favor of a stay.

> One of the most important factors in the balancing process is "the degree to which the civil issues overlap with the criminal issues" because "[i]f there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." Thus a stay is most appropriate where the subject matter of the parallel civil and criminal proceeding or investigation is the same.[22]

Joshua was criminally charged with raping his stepdaughter. By contrast, in Sandra's petition for a DVPO, she claimed that Joshua physically abused their children and threatened her with physical violence as well as threatened suicide. The court found that although the two cases do not involve identical behavior, they are "uniquely aligned" because they both involve domestic violence.

The similarities between the civil and criminal matters would ordinarily weigh in favor of a stay. But because DVPO proceedings are special proceedings and pose substantially less danger of self-incrimination than do

---

[22] Olympic Pipe Line, 104 Wn. App. at 357 (alteration in original) (footnotes omitted) (quoting Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1990); Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) and citing United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, 811 F. Supp. 802, 806 (E.D.N.Y. 1992)).

other civil proceedings, a court could reasonably decide that the similarities provide minimal weight, if any, for a stay.

*3. Status of the Criminal Case*

Joshua contends that the pending status of his criminal case weighs in favor of a stay due to Fifth Amendment concerns. A stronger argument exists for deferring civil proceedings until the completion of parallel criminal proceedings when a party, regardless of whether he has been charged, faces a real danger of self-incrimination in a subsequent criminal proceeding.[23] As discussed above, because the special nature of DVPO proceedings does not place Joshua in significant danger of incriminating himself, a court could reasonably decide that the status of his criminal case does not weigh in strong favor of a stay.

*4. The Interest of the Plaintiffs in Proceeding Expeditiously and the Potential Prejudice to Plaintiffs of a Delay*

Joshua asserts that his Fifth Amendment rights trump Sandra's interest in expeditious resolution of the DVPO matter. "Civil plaintiffs have a substantial interest in expeditious conduct of their litigation."[24] But Olympic Pipe Line notes that "while stale memories pose a risk, . . . under settled authority the Fifth Amendment is the more important consideration.'"[25] Here, however, Joshua's

---

[23] Olympic Pipe Line, 104 Wn. App. at 358-59.
[24] Olympic Pipe Line, 104 Wn. App. at 359.
[25] Olympic Pipe Line, 104 Wn. App. at 360 (alteration in original) (quoting Volmar Distribs., Inc. v. New York Post Co., 152 F.R.D. 36, 40 (S.D.N.Y. 1993)).

Fifth Amendment rights are not substantially infringed, and delay poses hardship to Sandra beyond stale memories.

First, delaying DVPO proceedings denies plaintiffs their right to meaningfully access the courts. By continuing a DVPO matter until the defendant's parallel criminal case is resolved, the court prevents a plaintiff from timely receiving her statutory remedy under the DVPA.[26] The legislature enacted the DVPA to expedite protection orders and provide victims "easy, quick, and effective access to the court system."[27] Here, the trial court continued the DVPO matter four times, spanning over eight months, before ultimately granting Sandra a hearing on the merits of her request. An eight-month delay does not fulfill the DVPA's purpose of providing Sandra easy, quick, and effective access to the court system.

Second, delaying proceedings hinders victims' ability to act pro se. The Washington Supreme Court recognized that "[b]ecause many victims are unable to retain counsel, the system is designed for use by pro se litigants."[28] In an effort to remove financial barriers for victims, the DVPA prohibits agencies from charging fees for filing, service of process, or certified copies.[29] Courts must

---

[26] RCW 26.50.020(1)(a) ("Any person may seek relief under this chapter by filing a petition with a court alleging that the person has been the victim of domestic violence committed by the respondent.").
[27] LAWS OF 1992, ch. 111, § 1.
[28] Aiken, 187 Wn.2d at 497.
[29] RCW 26.50.040.

develop instructions, informational brochures, and a handbook on the domestic violence process and procedures, and are required to provide other services to make it easier for pro se litigants to access the courts.[30] When a court repeatedly continues DVPO proceedings, the system becomes too challenging to navigate and pro se litigants are forced either to abandon their claims or seek pro bono or hired counsel if they are able. Sandra appeared pro se through three continuances. Seven months of delay forced her to seek pro bono counsel. Without this counsel, repeated delays prevented Sandra from receiving full relief under the DVPA, which contravenes its purpose.

Third, delaying DVPO matters places victims and their families at risk. "Prolonged court proceedings increase the risk of danger to a victim of domestic violence."[31] Even when a court hearing a criminal case prohibits the defendant from contacting the victim,[32] the no-contact order does not provide as much protection as a DVPO. A no-contact order terminates if the criminal defendant is acquitted or the charges are dismissed.[33] The victim may receive no notice when the no-contact order is dismissed nor have the chance to contest the termination of an order. By contrast, a full DVPO may require the defendant to participate in domestic violence perpetrator treatment, restrain him from further contact with

---

[30] RCW 26.50.035.
[31] Juarez v. Juarez, 195 Wn. App. 880, 889, 382 P.3d 13 (2016).
[32] RCW 10.99.040(2)(a).
[33] RCW 10.99.040(3).

the victim or the children at issue, require him to submit to electronic monitoring, and allow the victim to seek renewal of the order, among other requirements.[34]

Finally, delay may cause victims to abandon their petition due to exhaustion, frustration, or as a result of logistical obstacles. For example, a victim may not be able to take time off work repeatedly or find childcare or transportation to address each continuance. A victim may also experience these hardships with a temporary DVPO. The trial court granted Sandra five temporary orders. Although Sandra persevered, it may be prohibitive for a victim to return to court repeatedly to oppose multiple continuances or ask the court to reissue a temporary order; logistical impediments may pose enough of a barrier to dissuade a victim from pursuing even a temporary DVPO.

Temporary orders raise an additional concern. Federal and Washington state law prohibit an abuser from possessing firearms only if the court issues a full protection order.[35] Thus, when a court issues only a temporary order, the firearm prohibition is not available.[36] Although Joshua warned his stepdaughter that if she told anyone about the sexual abuse he would "get his gun, shoot the whole family, and then he would kill himself," the trial court had authority to order Joshua to surrender his firearms only after it granted Sandra a full protection order.

---

[34] RCW 26.50.060.
[35] 18 U.S.C. 922(g)(8); RCW 9.41.040(2)(a)(ii).
[36] RCW 9.41.040(2)(a)(ii)(A).

-13-

Although the superior court did not account for the special nature of DVPO proceedings and therefore attributed more weight than was due to the potential infringement on Joshua's Fifth Amendment privilege, the court recognized that if Joshua continued his trial beyond November, prejudice to Sandra would outweigh the burden on Joshua. A court could reasonably conclude that the many potential burdens of further delaying the DVPO proceedings would cause Sandra substantial hardship that weighs in strong opposition to a stay.

*5. The Burden that Any Particular Aspect of the Proceeding May Impose on the Defendants*

Joshua asserts that proceeding with the DVPO hearing before resolution of his criminal case imposed a number of burdens that weigh in favor of a stay. Olympic Pipe Line recognizes that the burdens on the defendant may include the diversion of resources in simultaneous defense of civil and criminal actions or the likelihood that the materials uncovered during civil discovery may aid the prosecution.[37] Asserting a Fifth Amendment privilege during civil discovery may constitute a "'road map'" and provide a "'link in the chain of evidence'" benefiting the prosecution.[38] As discussed above, if the defendant exercises his Fifth Amendment rights, an adverse inference can be drawn by the trier of fact. In

---

[37] Olympic Pipe Line, 104 Wn. App. at 362-63.
[38] Olympic Pipe Line, 104 Wn. App. at 364 (quoting Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1203 (Fed. Cir. 1987)).

-14-

addition, imposition of a DVPO requires the defendant to surrender any firearms and could prohibit him from contacting his children.

Although the trial court found that "the risk of incrimination . . . is severe," the special nature of DVPO proceedings significantly reduces that risk. Indeed, the parties do not have a right to discovery, and in this case neither party requested discovery. Thus, the DVPO proceedings provided the State with no "road map" or "link in the chain" aiding its prosecution. Moreover, the defendant generally need not assert his Fifth Amendment privilege in DVPO proceedings. This eliminates the concern that the trier of fact may draw an adverse inference. Joshua, in fact, did not invoke his Fifth Amendment privilege. Instead, his counsel stated that "we do not intend to present any testimony on behalf of the respondent."

Finally, having to expend resources in both his civil and criminal proceedings could burden Joshua, assuming the court has not made a finding of indigency. But on balance, a court could reasonably decide that this burden is slight compared to the potential hardships delay could cause Sandra.

6. *The Convenience of the Court in the Management of Its Cases and the Efficient Use of Judicial Resources*

Parallel proceedings may raise concerns about calendar congestion and duplicative judicial effort.[39] But the alternative to holding the DVPO hearing is to

---

[39] Olympic Pipe Line, 104 Wn. App. at 365.

require a victim to repeatedly ask to renew a temporary order. Thus, proceeding with a single DVPO hearing may congest the court's calendar less considering the possibility of multiple requests for continuances and the repeated reissuance of a temporary order. Moreover, there may be little risk of duplicative judicial effort. If the civil and criminal cases are at all distinct, resolution of the criminal case may not resolve the issues in the DVPO case. Thus, the trial court would still need to hold a DVPO hearing after the conclusion of the criminal case.

Olympic Pipe Line notes another concern. Often, "after the criminal matter is resolved and the Fifth Amendment issue gone, civil discovery will proceed more smoothly and efficiently."[40] But if the State criminally charged the defendant with only some of the conduct at issue in the DVPO proceeding, he is unlikely to waive his Fifth Amendment privilege to testify in the civil proceeding. Here, Joshua would be unlikely to waive his privilege even after resolution of his criminal case because the State did not charge him with the physical abuse of his children alleged in the protection order petition.

In addition, the DVPA states that relief under the DVPA "shall not be denied or delayed on the grounds that the relief is available in another action."[41] The DVPA therefore explicitly prohibits the trial court from delaying DVPO proceedings based on the rationale that the issues underlying that DVPO matter

---

[40] Olympic Pipe Line, 104 Wn. App. at 365.
[41] RCW 26.50.025(2); see also Juarez, 195 Wn. App. at 883-84, 887-88.

could be resolved in another proceeding. Thus, a court could reasonably decide that the efficient use of judicial resources weighs in favor of not staying the DVPO matter and proceeding as the legislature intended.

*7. The Interests of Persons Not Parties to the Civil Litigation*

Olympic Pipe Line notes that the interests of persons not parties to the civil litigation may be entitled to "'real weight.'"[42] The public and the courts have a strong interest in the protection of minor children, particularly when they are the victims of abuse. Both have an interest in a protection order being issued expeditiously. In her petition, Sandra contends that Joshua "slammed" their son into the wall and spanked their daughter "to the point that she couldn't sit." The trial court reasonably noted that the children's interests in issuance of the order weigh against a stay.

*8. The Interest of the Public in the Pending Civil and Criminal Litigation*

The public interest also includes an interest in the integrity of the judicial system.[43] This case implicates that interest because of general concern about how the judicial system resolves DVPO matters. The legislative findings in RCW 26.50.030 provide instruction about how the DVPA serves the public interest and express concerns about the need to improve the judicial response to domestic violence. The legislature enacted the DVPA to provide "the easy, quick, and

---

[42] Olympic Pipe Line, 104 Wn. App. at 366 (quoting Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 58 (E.D. Pa. 1980)).

[43] Olympic Pipe Line, 104 Wn. App. at 367-68.

-17-

effective access to the court system envisioned at the time the protection order process was first created."[44] The legislature envisioned that the DVPA would make protection orders more of a "valuable tool to increase safety for victims and to hold batterers accountable."[45] "[T]he legislature has sought to further [prevent domestic violence] by taking clear, concrete actions to encourage domestic violence victims to end abuse, leave their abusers, protect their children, and cooperate with law enforcement and prosecution efforts to hold the abuser accountable."[46]

The trial court found that when the court "does not afford prompt, efficient relief, it to a degree becomes an obstacle to the significant public interest that the legislature said it had in addressing the immense proportions of domestic violence." Denying a full protection order because of the defendant's pending parallel criminal proceedings neither honors the purpose of the DVPA nor serves the public interest of ensuring victims of domestic violence have access to an expedited process for receiving a protection order. A court could reasonably decide that the public interest weighs in strong favor of denying a stay.

---

[44] LAWS OF 1992, ch. 111, § 1.
[45] LAWS OF 1992, ch. 111, § 1.
[46] Danny v. Laidlaw Transit Servs., Inc., 165 Wn.2d 200, 213, 193 P.3d 128 (2008).

*Conclusion on Olympic Pipe Line Factors*

On balance, a court could reasonably decide that the Olympic Pipe Line factors heavily weigh in favor of proceeding with the DVPO matter before resolution of Joshua's criminal case. Because of the special nature of DVPO proceedings, there is minimal to nonexistent infringement on Joshua's Fifth Amendment privilege compared to the potentially heavy burden a stay would impose on Sandra. Also, staying DVPO proceedings frustrates the purpose of the DVPA—to provide quick and effective access to the judicial system to victims of domestic violence. The superior court did not abuse its discretion by granting the DVPO while Joshua's criminal matter was pending.

We note that in future cases, the parties could avoid many of the issues presented in this case and reconcile the defendant's interest in protecting his Fifth Amendment right with the plaintiff's interest in avoiding the hardship associated with delay. They could accomplish this by stipulating to an order of continuance that remains in effect until after the resolution of the criminal case, incorporates the defendant's voluntary agreement to surrender all firearms, and grants the same protections as a full protection order.

## II. Due Process

Joshua contends that the DVPO proceedings denied him an opportunity to be heard "at a meaningful time and in a meaningful manner" in violation of his

constitutional right to due process.[47] We disagree. Whether the DVPO proceedings afforded Joshua due process is a question of law that this court reviews de novo.[48]

Both the Washington Constitution and the federal constitution guarantee due process before a court restricts a person's liberty.[49] Protection orders implicate a respondent's liberty interests.[50] The Washington Supreme Court recently held that chapter 26.50 RCW, the DVPA, satisfies the respondent's constitutional right to due process: "[The] guarantee that a person must be heard at a meaningful time and in a meaningful manner is protected by the procedures in chapter 26.50 RCW."[51] Because the DVPA did not deprive Joshua of any constitutionally required procedural safeguards, the trial court did not deny Joshua due process when it ultimately denied his request to stay the DVPO proceedings.

## CONCLUSION

The trial court did not abuse its discretion by deciding that a balancing of the Olympic Pipe Line factors weighed in strong favor of proceeding with the

---

[47] Aiken, 187 Wn.2d at 501 (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).
[48] Aiken, 187 Wn.2d at 501.
[49] WASH. CONST. art. I, § 3; U.S. CONST. amend. XIV, §1.
[50] Gourley, 158 Wn.2d at 467-68.
[51] Aiken, 187 Wn.2d at 503. The court cites Mathews, 424 U.S. at 335, in which the United States Supreme Court established the three-factor balancing test to be used in evaluating the process due in a particular circumstance.

No. 76247-8-I / 21

DVPO matter.  Also, the court did not deny Joshua due process because the DVPA affords respondents due process.

Affirmed.

_Leach, J_

WE CONCUR:

_Spearman, J._                    _Appelwick, J_

-21-