Sol Neil CORBIN, as Trustee in Bankruptcy of Franklin New York Corporation, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, in its corporate capacity and as Receiver of Franklin National Bank, et al., Defendants.

MANUFACTURERS HANOVER TRUST COMPANY, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, in its corporate capacity and as Receiver of Franklin National Bank, et al., Defendants.

Sol Neil CORBIN, as Trustee in Bankruptcy of Franklin New York Corporation, Plaintiff,

v.

NATIONAL SURETY CORPORATION et al., Defendants.

FEDERAL DEPOSIT INSURANCE COR-PORATION, in its corporate capacity and as Receiver of Franklin National Bank, Plaintiff,

v.

NATIONAL SURETY CORPORATION et al., Defendants.

Nos. 75 Civ. 2144, 76 Civ. 1102, 76 Civ. 515 and 76 Civ. 494.

United States District Court, E. D. New York.

March 30, 1977.

Barrett, Smith, Schapiro & Simon, New York City, for Corbin.

Casey, Lane & Mittendorf, New York City, for F. D. I. C. & Franklin Nat. Bank.

Simpson Thacher & Bartlett, New York City, for plaintiff in No. 76 Civ. 1102.

Rivkin, Leff & Sherman, Garden City, N. Y., Paul, Weiss, Rifkind, Wharton & Garri-son, New York City, Shea, Gould, Climenko, Kramer & Casey, New York City, for de-fendants in No. 76 Civ. 494.

**148**

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff, Corbin, as Trustee in Bankruptcy of Franklin New York Corporation, moves for an order pursuant to Rule 37 of the Federal Rules of Civil Procedure to compel answers by Peter Shaddick, a defendant in several actions involving the Franklin National Bank ("FNB") and an alleged important witness, with respect to FNB's foreign exchange activities in a deposition heretofore noticed. On the return date of the noticed deposition, Mr. Shaddick, through his attorney, invoked his privilege against self-incrimination with respect to the several areas of testimony which the plaintiff indicated he intended to cover on the examination.

Mr. Shaddick is a former Executive Vice Chairman of both FNB and Franklin New York Corporation ("FNYC") and also served on FNYC's Board of Directors. He was a member of FNYC's International Executive Committee in charge of the International Banking Division at FNB and, among other things, supervised FNB's foreign exchange trade.

On September 29, 1975, Mr. Shaddick was indicted for several violations of federal law, a summary of which, according to the Trustee, is as follows:

| Count | Offense |
|---|---|
| 1 | Conspiracy to defraud United States, Comptroller of the Currency, Department of Treasury, Federal Deposit Insurance Corporation, Federal Reserve Board, Federal Reserve Bank of New York, Securities and Exchange Commission and to commit certain offenses in violation of Titles 12, 15 and 18 of United States Code. |
| 2 | Misapplication of FNB's funds. |
| 3–21 | False entries in the books, reports and statements of FNB and FNYC. |
| 22 | Wilfull and knowing submission of false statements to Manufacturers Hanover Trust Company ("Manufacturers"). |
| 23–59 | Mail fraud with respect to the mailing of foreign exchange contract confirmations. |

| Court | Offense |
|---|---|
| 60 | Wire fraud. |
| 61–72 | False statements to Comptroller of the Currency, Federal Deposit Insurance Corporation, Federal Reserve Bank of New York, and the Federal Reserve Board of the United States. |
| 73–75 | Filing of false and misleading reports with the Securities and Exchange Commission. |
| 76–82 | Criminal violation of Rule 10b–5 (17 C.F.R. § 240.10b–5). |

On December 3, 1975, Mr. Shaddick pled guilty to Counts 1, 2, 21 and 22 of the above-described indictment and, after accepting the guilty plea the Court deferred his sentence until after the trial of his co-defendants and also apparently until after the completion of his cooperation with the government. According to the latest information available to this Court, the latter (i. e., Mr. Shaddick's cooperation) is still continuing and Mr. Shaddick's sentence date still remains to be determined.

In *United States v. Domenech*, 476 F.2d 1229 (2d Cir.), *cert. denied*, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973), the defendant Domenech called his brother-in-law as a witness who claimed his privilege against self-incrimination on the ground that he had shortly before pleaded guilty to a conspiracy charge in a two-count indictment but had not yet been sentenced. "[T]he second (substantive offense) count was still outstanding against him but was fully expected to be dismissed upon sentencing." 476 F.2d at 1230–1231. Under such circumstances the Court of Appeals for this Circuit held (476 F.2d at 1231):

"In any event, the claim of privilege was well-taken. Count 2 still remained open against Pereira and his testimony, whether or not it helped Domenech, could very well have further incriminated himself on that offense. Though it was very likely that count 2 would be dismissed, that had not yet occurred and Pereira can hardly be faulted for taking the most cautious position. Even on the conspir-

acy charge to which he had pleaded guilty, evidence compelled at Domenech's trial could well hamper a possible attempt by the witness to withdraw his plea before sentence. *See State v. Tyson*, 43 N.J. 411, 204 A.2d 864, 866–867 (1964), cert. denied, 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965). Moreover, under the existing precedents it was open to the State of New York to prosecute Pereira on the same heroin transaction (*Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959)), and his Fifth Amendment privilege included a right against self-incrimination under the state penal laws. *See Kastigar v. United States*, 406 U.S. 441, 456–457, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. Chandler*, 380 F.2d 993, 997 (2d Cir., 1967). In short, if Pereira had refused a direct order to testify, a contempt judgment against him could not be allowed to stand since in no way would it be perfectly clear that the answers would not possibly incriminate. *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *United States v. Chandler, supra.*"

Plaintiff Trustee argues, in effect, that this decision should be limited to criminal trial testimony and, alternatively, that the risk of self-incrimination is minimal in the case at bar and since all that is sought is civil deposition (and not trial) testimony the same may be protected by restricting attendance at the deposition to counsel for the parties and sealing the transcript with a ban on governmental access thereto.

■ The Court fails to see the distinction suggested by the plaintiff Trustee that the *Domenech* case is not controlling because it involved criminal trial testimony, as distinguished from civil deposition testimony. A witness in a civil case does not lose his privilege against self-incrimination because he is called upon to testify in a civil deposition or a civil trial, as contrasted to a criminal proceeding. See, e. g., *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y.1970), and cases cited therein, and also *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *Gulf Oil Corp. v. Tug Kate Malloy*, 291 F.Supp. 816, 818 (E.D.La. 1968).

■ With respect to plaintiff Trustee's argument that the risk of self-incrimination is minimal, there is no certainty that this is true. It is not sufficient to state, as the plaintiff Trustee attempts to do, that "before accepting [Mr. Shaddick's] plea, the [Southern District] court questioned him carefully on three separate occasions (95 pages of transcript) on his role in the transaction underlying all of the offenses charged in the indictment" and that "during this examination, Shaddick admitted his participation and described in some detail" the facts in many of the areas on which the plaintiff Trustee proposes to examine. In the event that the Court were to permit Mr. Shaddick to withdraw his plea for some reason, it might well be that none of such testimony would be admissible against Mr. Shaddick in any subsequent criminal trial. Accordingly, this is not a sufficient reason for compelling Mr. Shaddick to testify at this time.

Finally, plaintiff Trustee argues that the appropriate step to take at this juncture is for this Court to issue a protective order restricting attendance at the deposition to counsel for the parties and sealing the transcript "thus preventing access to it by the government as well as any parties who may be the subject of the government's continuing investigation".

There is a real doubt in the Court's mind whether such procedure is the proper one and there is also a substantial doubt as to whether the same would be effective in the event that one or more counsel were summoned before a grand jury and asked to testify with respect to the testimony given by Mr. Shaddick. In any event, these questions need not now be decided because it is perfectly clear to this Court that, while a stay of Mr. Shaddick's deposition until he is sentenced or until one or more of the above-captioned or related cases where his testimony is necessary is ready for trial may cause some inconvenience and delay to the plaintiffs, "protection of defendant's consti-

**150**

tutional rights against self-incrimination is the more important consideration". *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y.1970).

Accordingly, plaintiff's Trustees motion for an order pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel answers by defendant Peter Shaddick and his deposition to all questions relevant to the subject matter of the above-captioned actions, must be, and the same hereby is, denied at this time, without prejudice to any renewal thereof by any party following the sentencing of Mr. Shaddick and in any event prior to the point when any case is otherwise ready for trial and the parties are prepared to execute and file a pretrial order with this Court.

SO ORDERED.