# UNITED TECHNOLOGIES CORPORATION, HAMILTON STANDARD DIVISION, Plaintiff,

v.

# Roberta Ellis DEAN aka Roberta Ellis Foley, and David L. Foley, Jr. aka David L. Foley, Defendants.

## Civ. A. No. 95–30035 MAP.

United States District Court,
D. Massachusetts.

Sept. 22, 1995.

Laurel H. Brandt, Basile & Brandt, East Longmeadow, MA, for Plaintiff United Technologies Corporation, Hamilton Standard Division.

John F. Gallagher, Mark J. Albano, Dalsey, Ferrara, Townsend and Albano, Springfield, MA, for Defendant Roberta Ellis Dean aka Roberta Ellis Foley.

John F. Gallagher, Springfield, MA, Patrick J. Ward, Wilbraham, MA, for Defendant David L. Foley, Jr. aka David L. Foley.

## *MEMORANDUM AND ORDER REGARDING PLAINTIFF ROBERTA ELLIS DEAN'S MOTION TO STAY ACTION*

NEIMAN, United States Magistrate Judge.

Defendant Roberta Ellis Foley ("Dean") has moved to stay this civil action pending the resolution of criminal proceedings against her in Connecticut. On December 23, 1994, a criminal information was filed against Dean in the Connecticut Superior Court at Enfield, charging her with one count of first degree larceny. Connecticut General Statute § 53a–122. In support of her motion, Defendant advocates a "balancing of the interests," arguing that she will be prejudiced if forced to continue this action while such criminal proceedings go forward, that a stay would not injure the public interest, and that the interests of Plaintiff United Technologies Corporation ("UTC") are adequately protected and will not be impaired by a stay.

UTC's civil action was commenced on February 15, 1995. Dean's husband, David L. Foley, Jr., ("Foley") is also a named defendant. UTC asserts that Dean, a former employee, embezzled approximately $145,000 from the corporation. Proceeds of the monies were allegedly used to renovate the home of Dean and Foley, pay for limousines

for their wedding party, and compensate their attorneys. At the time of the hearing on Dean's motion for stay, the criminal case against her was still pending and a trial had not yet been scheduled. A further pretrial conference is evidently scheduled for October 20, 1995.

## ARGUMENTS

Dean is most concerned with the prejudice she would endure if a stay were not granted. She contends that the identity of the subject matter between this and the criminal proceeding, coupled with UTC's discovery requests, forces her to make the untenable "Hobson's choice" between invoking her privilege against self incrimination or answering discovery questions and risking negative criminal ramifications. Dean asserts that, in the interests of justice, the Court has the power, to stay civil proceedings, postpone civil discovery or impose protective orders and conditions to protect a criminal defendant. See *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y.1985). Dean asserts that, absent a corresponding public interest, a civil action may be deferred where going forward would expose a defendant to a real and appreciable risk of self incrimination, expand criminal discovery beyond what is otherwise available, reveal the basis of the criminal defense in advance of the criminal trial, or otherwise undercut due process protections. See, *Dresser*, 628 F.2d at 1375; *United States v. Kordel*, 397 U.S. 1, 8–9, 90 S.Ct. 763, 767–68, 25 L.Ed.2d 1 (1970); *Brock*, 109 F.R.D. at 119; *U.S. v. Henry*, 491 F.2d 702 (6th Cir. 1974); *Gordon v. Federal Deposit Ins. Corp.*, 427 F.2d 578 (D.C.Cir.1970); *Texaco, Inc. v. Borda*, 383 F.2d 607, 608–609 (3rd Cir.1967); and *Silver v. McCamey*, 221 F.2d 873, 874–875 (D.C.Cir.1955). According to Dean, the public interest is not implicated here, in that the stay of this action would present no tangible threat of immediate and serious harm to the public at large. Compare, *Dresser* (dissemination of false and misleading investing information to the public); *Kordel* (involving widespread distribution of misbranded drugs); and *Arthurs v. Stern*, 560 F.2d 477, 480 (1st Cir.1977) (involving prompt administrative discipline of errant physicians), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

Finally, Dean argues that UTC's interests are adequately protected and would not be impaired by a stay. She notes that UTC has sought and obtained attachments against both Defendants and that the resolution of the criminal proceeding, including potential restitution, may simplify discovery or otherwise narrow the issues in this case. *Texaco*, 383 F.2d at 609 (advocating weighing of computing interests in determining stay); *Corbin v. Federal Deposit Ins. Corp.*, 74 F.R.D. 147, 149–150 (E.D.N.Y.1977) (protection of Defendants' constitutional rights against self incrimination is more important than inconvenience and delay to the Plaintiff).

UTC, in response, notes that the Constitution does not require a stay of civil proceedings pending the outcome of parallel criminal proceedings. See *Dresser*, 628 F.2d at 1375; *Arthurs*, 560 F.2d at 479–80; and *Arden Way Assocs. v. Boesky*, 660 F.Supp. 1494, 1496 (S.D.N.Y.1987). First, UTC argues that a stay will prejudice its interests, given that witnesses and documents need to be gathered quickly before memories fade or become stale, witnesses become unavailable, records are purged, and documents disappear. UTC asserts that any delay will impair its ability to collect a substantial judgment against the Defendants. UTC fears the shrinking of the Defendants' funds, worries that they may transfer and/or liquidate other assets, and notes that any claim it has in Defendants' real estate is modest given the limited equity of the property and its senior mortgages. In addition, UTC argues that the completion of criminal proceedings will not simplify or narrow the issues in this case. For example, according to UTC, Connecticut probationary restitution order, if entered, would be limited to five years, and the amount ordered may be less than the sum necessary to fully compensate a victim. See Connecticut General Statutes §§ 53a–29(D) and 53a–30.

UTC also disputes Dean's claim of jeopardy by having to choose between responding

to civil discovery and asserting a fifth amendment privilege. UTC asserts that Dean, in fact, has already made her choice by asserting her Fifth Amendment privilege, both in answer to the criminal complaint and to certain discovery. UTC asserts that the Constitution neither requires a stay nor forbids an adverse inference from a party's assertion of the privilege. See *Baxter v. Palmigiano*, 425 U.S. 308, 317–318, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976); and *Bellum v. Vose*, 848 F.Supp. 1065, 1067 (D.Mass.1994). UTC labels Dean's claim of prejudice as conclusory, theoretical, speculative, and insufficient to justify a stay. See *United States v. All Funds On Deposit, etc.*, 767 F.Supp. 36, 42 (E.D.N.Y.1991). Finally, UTC argues that speedy and efficient handling of the case is in the public's interest.

## DISCUSSION

As more specifically described below, the Court will allow Dean's motion for a stay, but only in part. First, Dean has sought to stay this proceeding entirely, rather than merely certain aspects of it. For this proposition, Dean has relied primarily on cases in which the government is both civil and criminal litigant—where the fear of prejudice to a defendant is more pressing than here. Moreover, Dean has not made the requisite showing that the civil and criminal matters at issue here are entirely parallel. See *Brock*, 109 F.R.D. at 119 ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter, and is even more appropriate when both actions are brought by the government" (citation omitted)); *Dresser*, 628 F.2d at 1375–1376 ("Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter"). In its present matter, Dean is not the only defendant and UTC is obviously not an arm of the government.

Dean, however, impliedly relies on a hypothetical raised by the defendants in *Kordel, supra*, i.e., whether a deponent could answer civil interrogatories without incriminating herself. The Court there responded, "[f]or present purposes we may assume that in such a case the appropriate remedy would be a protective order under Rule 30(b), postponing civil discovery until after termination of the criminal action." *Kordel*, 397 U.S. at 9, 90 S.Ct. at 768. The First Circuit, however, has refused to interpret this "cautiously tentative language" to hold that such an order is compelled. *Arthurs*, 560 F.2d at 479. Nonetheless, while a stay may cause some inconvenience and delay to UTC, "protection of defendant's constitutional rights against self incrimination is the more important consideration". *Corbin*, 74 F.R.D. at 149–150 (quoting *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y.1970)).

## CONCLUSION

Balancing the interests in this matter, the Court hereby stays any testimonial discovery of Defendant Roberta Ellis Dean, including her deposition, request for admissions from her or interrogatories propounded to her. The stay shall be effective through November 17, 1995 only. All other discovery shall proceed in accord with the July 14, 1995 Further Scheduling Order of District Judge Michael A. Ponsor. Discovery with respect to Defendant Dean herself shall be commenced and completed between November 20, 1995 and December 29, 1995. Should UTC thereafter with to pursue further discovery, as a result of the discovery directed at Dean, it shall seek leave of court.

The parties are to appear before this Court on September 29, 1995 at 1:00 p.m. for a settlement conference in accord with directions provided at the hearing on Dean's motion. Unless the matter is settled, Counsel will appear again before District Judge Michael A. Ponsor for a final pre-trial conference on February 1, 1996 at 2:00 p.m. Except as so modified, the Further Scheduling Order of July 14, 1995 and the Procedural Order Re: Final Pre-trial Conference/Trial of said date shall both remain in effect.

IT IS SO ORDERED.