**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**PACIFIC FIRST BENEFIT, LLC, Key Nation Benefit, LLC, First Federal Benefit, LLC, Federal Credit Services, Limited, and Alex Orphanou, Defendants.**

No. 02 C 8678.

United States District Court,
N.D. Illinois,
Eastern Division.

March 18, 2005.

Karen D. Dodge, Federal Trade Commission Assistant Regional Director, Chicago, IL, for Plaintiff.

Daniel Steven Reinberg, Foley & Lardner, Chicago, IL, Andrew N. Cove, Hector E. Lora, Cove & Associates, P.A., Hollywood, FL, for Defendants.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court are Plaintiff Federal Trade Commission's Motion to Compel Production of Documents and Answers to Interrogatories, and Defendant Alex Orphanou's Motion to Stay or, in the Alternative, for Protective Order Sealing Discovery. On December 3, 2004, the court referred these matters to Magistrate Judge Brown. On February 10, 2005, Judge Brown issued a ruling directly from the bench granting Plaintiff's Motion and denying Defendant's Motion. For the reasons stated below, the court finds that Magistrate Brown's ruling was entirely consistent with the applicable law. The court therefore will not overturn her decision.

## I. INTRODUCTION

### A. Facts

Plaintiff Federal Trade Commission ("FTC" or "the Commission") brings this action against Defendants Pacific First Benefit, LLC, Key Nation Benefit, LLC, First Federal Benefit, LLC, Federal Credit Services, Limited, ("the Companies"), and Alex Orphanou ("Orphanou"). Plaintiff FTC is an independent agency of the United States Government, created by federal statute. The FTC, *inter alia*, enforces Section 5(a) of the FTC Act, which provides in part that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared

unlawful." 15 U.S.C. § 45(a)(1). The FTC also enforces the Telemarketing Sales Rule, which prohibits deceptive or abusive telemarketing practices. 16 C.F.R. §§ 310.3–4. The Commission is authorized by statute to bring actions in the federal district court which seek to enjoin violations of the FTC Act and the Telemarketing Sales Rule, and to obtain restitution or other relief for injured consumers. 15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b). Defendant Companies are all owned and controlled by individual Defendant Orphanou, and are all corporations registered in the state of Delaware, with their offices located at 164 Eglinton Avenue East, Suite 200, Toronto, Canada.

The FTC alleges that since February 1999, employees of the Companies made unsolicited telephone calls to American consumers (no Canadian consumers were targeted), including consumers in the Northern District of Illinois. These consumers were targeted by the Defendants because of their low or bad credit ratings. During the telephone calls, Defendants' employees would offer to provide consumers with pre-approved, low interest Mastercard or Visa credit cards, if the consumer would agree to permit Defendants to debit their bank accounts for a fee ranging from $175 to $199. Defendants' employees would ask the consumers for bank account numbers and routing information, then debit the accounts later. However, no consumer ever received a pre-approved credit card from Defendants. In fact, Defendants were not even authorized by Mastercard or Visa to issue credit cards.

Instead, the consumers who fell victim to this alleged scam received a packet of materials which included information about credit and finances, how to obtain credit and repair bad credit, various offers of discount shopping and vacations, and advice concerning how to avoid financial and credit card fraud (Defendants' wonderful sense of irony is not lost on the court). These packets also included forms that appeared to be credit card applications. These "applications" asked consumers to provide personal information such as social security numbers and employment history. Consumers were to return these "applications" to Defendants, who promised to forward these "applications" to financial institutions that would issue credit cards to the consumers. Consumers who returned these "applications" never received credit cards. The FTC alleges that Defendants ultimately defrauded over 6,000 consumers of between $1.3 and $5 million dollars. The Commission brings this action to, *inter alia*, obtain an injunction permanently halting Defendants from continuing this alleged scam, and to obtain restitution for consumers allegedly defrauded by the Defendants.

This civil action, however, is far from the worst of Orphanou's problems. In December 2001, the United States Attorney for the Middle District of Pennsylvania and the Royal Canadian Mounted Police ("RCMP"), along with the United States Postal Service ("USPS") and the FTC, began an investigation into whether the Defendants' actions had violated criminal laws. During the course of this investigation, a Canadian court issued a search warrant and an order to gather evidence. This order authorized Canadian authorities to search the Companies' offices, and to obtain evidence against Orphanou. The RCMP, along with an Inspector from the USPS, executed this warrant on December 3, 2002 seizing approximately thirty boxes of business records and other evidence from Defendants' Toronto offices. The United States then requested that the seized evidence be sent to United States authorities. The Canadian court denied this request, and ordered that the evidence be returned to Orphanou. The RCMP then complied with the Canadian court's

order, and returned these documents and other evidence (including computer hard drives) to Orphanou. Orphanou has present custody of this evidence.

## B. Procedural History

The FTC filed its Complaint against the Defendants on December 2, 2002. On October 8, 2003, the FTC filed its Motion to Compel Production of Documents and Answers to Interrogatories. In this Motion, the FTC asked the court to compel Orphanou to hand over the evidence seized by the RCMP. The court initially denied this Motion, but eventually ordered that Orphanou either "produce [the] requested documents or file a response within 21 days." Minute Order of October 17, 2003; Minute Order of June 1, 2004. Orphanou timely filed a response on June 22, 2004. In that Response, Orphanou asserted that his Fifth Amendment privilege against self-incrimination precluded him from being forced to turn over the documents and other evidence seized by the RCMP. Orphanou also moved the court to stay the FTC's civil action pending resolution of any criminal actions that might be brought against him. In the alternative, Orphanou moved the court for a protective order that would prevent the FTC from disclosing any of the evidence in question to any third parties, including the USPS Inspection Service and the United States Department of Justice.

On December 3, 2004, the court referred this matter to Magistrate Judge Brown. Judge Brown, for reasons that will be explored below, denied Orphanou's Motion for a stay, ordered Orphanou to produce the requested documents, and denied Orphanou's Motion in the alternative for a protective order. Judge Brown issued this ruling directly from the bench, on February 10, 2005.

Defendants, pursuant to Federal Rule of Civil Procedure 72(a), timely filed their Objection to Magistrate Judge Brown's Ruling of February 10, 2005. The FTC filed its Response to Defendants' Objection on March 2, 2005. This matter is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

█ Federal Rule of Civil Procedure 72(a) states, in part:

Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order ... The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

FED. R. CIV. P. 72(a). The district court must review the magistrate judge's ruling under the "clear error standard," which "means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir.1997); *see also Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Under this standard, the court's review of Magistrate Judge Brown's decision is a deferential one. The court will therefore set aside or modify that decision only if it determines that it contains some clearly apparent mistake. *See Weeks*, 126 F.3d at 943; *Chavez v. Illinois State Police*, 27 F.Supp.2d 1053, 1066 (N.D.Ill.1998).

### B. Magistrate Judge Brown's Ruling

Judge Brown issued her ruling in this case directly from the bench, without a written opinion. Before she issued her ruling, Judge Brown allowed Defendants' attorney Dan Reinberg to explain that Or-

phanou was seeking this Protective Order so that the evidence seized by the RCMP would not be used against Orphanou in his pending criminal case.

> [O]ur concern is that to the extent that the criminal investigators here in the United States could not obtain these documents because of their own behavior in connection with the search warrant, we're concerned that this civil suit not be used as a pretext to obtain those very documents that they were denied. It's one thing to use these documents here in this civil case. It's another to have everything that's being done here being fed to the criminal investigators... [W]e don't think that's fair. We don't think it's appropriate.

Def.'s Objections to Magistrate Judge Brown's Ruling, Ex. A, 7–8. Judge Brown then ruled that "[D]efendant Alex Orphanou's motion for a stay is denied and his alternative request for a protective order sealing discovery is also denied... No later than February 28, 2005, Orphanou shall produce the documents ordered by the District Judge in his June 1st, 2004 order." *Id.* at 8.

In explaining her decision, Magistrate Judge Brown first addressed the issue of whether it would be appropriate to issue a stay of the instant civil case, pending resolution of Orphanou's criminal case. She stated that courts typically consider six factors in determining whether to issue a stay in these circumstances, citing *United States v. All Meat & Poultry Prods.*, No. 02–5145, 2003 WL 22284318, *1, 2003 U.S. Dist. LEXIS 17677 (N.D.Ill. Oct. 3, 2003). These factors are: (1) the extent to which the issues in both proceedings overlap, (2) the posture of the criminal proceedings, (3) the interest of the plaintiffs in proceeding quickly with the litigation, (4) the burden the civil suit may impose on a criminal defendant, (5) the burden imposed on the court, and (6) the interests of persons not

parties to the civil suit. *Id.* at **1–2, 2003 U.S. Dist. LEXIS 17677, 5–6.

Judge Brown indicated that while she had considered all of these factors in making her decision, the most significant reason she was denying the stay was because no indictment had been handed down in the criminal case. A stay in the civil case could therefore become "indefinite," Magistrate Brown reasoned. The FTC has, she explained, a statutory duty to bring these sorts of civil actions, and ought not be needlessly burdened by stays of indefinite length.

Judge Brown then addressed the issue of whether to seal discovery from third parties. She noted that the Seventh Circuit "has been sharply critical of District Courts entering blanket orders sealing proceedings or portions thereof in federal courts," citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir.1999). She then explained that while as an individual, Orpahnou could possibly assert a Fifth Amendment privilege, the Companies, as corporate Defendants, have no such privilege. As the only officer of each of the corporate Defendants, Judge Brown explained, Orpahnou is the sole custodian of the corporate records. Judge Brown then quoted the following passage from the Supreme Court decision in *Braswell v. United States:* "[A] corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating ...." 487 U.S. 99, 117, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Magistrate Brown then denied Orphanou's motion to seal discovery, and ordered Orphanou to produce the requested evidence by February 28, 2005.

## C. The Court's Review of Magistrate Judge Brown's Decision

After conducting a thorough review of the record, and undertaking some addi-

tional research on the applicable law, the court finds that Magistrate Judge Brown's ruling is not "clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72(a); *Weeks,* 126 F.3d at 943. Judge Brown's decision not to order a stay of this case was based on an examination of six factors; these factors are commonly used in these sorts of cases by district courts in the Northern District of Illinois, as well as other Districts. *See Benevolence Intern. Found., Inc. v. Ashcroft,* 200 F.Supp.2d 935, 938 (N.D.Ill.2002); *Nowaczyk v. Matingas,* 146 F.R.D. 169, 174 (N.D.Ill.1993); *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.,* 225 F.Supp.2d 263, 264–65 (E.D.N.Y.2002); *Volmar Distribs., Inc. v. The New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y.1993). In addition, Magistrate Brown took into account the fact that an indictment had not yet been handed down against Orphanou; other district courts have also reasoned that an indictment should be issued before a stay is granted. *See Am. Express,* 225 F.Supp.2d at 265; *Sterling Nat'l Bank v. A–1 Hotels Int'l, Inc.,* 175 F.Supp.2d 573, 576 (S.D.N.Y.2001). The standards on which Judge Brown relied in denying Orphanou's motion for a stay were thus solidly supported in the law.

Furthermore, the court finds that Magistrate Brown's determination that "[t]he Court has no reason to believe that this case is just a sham by which the government hopes to obtain information that it could not obtain in a criminal action" was entirely reasonable, given that the FTC is charged with the task of filing civil actions to enjoin violations of consumer laws, and to obtain restitution for victims of consumer fraud. Def.'s Objections to Magistrate Judge Brown's Ruling, Ex. A, 12; *see also United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 317, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) (when an agency undertakes an investigation for its own statutory purposes, and not as "an information gather-

ing agency for other departments," it acts in good faith). Judge Brown's decision not to direct a stay in this case, and to order Orphanou to comply with the district court's Order of June 1, 2004 to turn over the requested documents, was therefore not clearly erroneous. This court therefore declines the invitation to overturn this decision.

■ Magistrate Brown's decision to deny Orphanou's motion for a protective order sealing discovery was based primarily on the Supreme Court's decision in *Braswell.* In that case, the Court held that a custodian of corporate records may not refuse to produce those records on the grounds that doing so may incriminate him. *Braswell,* 487 U.S. at 100, 108 S.Ct. 2284. In that case, Braswell was the sole shareholder and the only acting officer of two corporate entities. *Id.* at 101, 108 S.Ct. 2284. After receiving a grand jury subpoena for certain corporate books and records, Braswell asserted that producing those records would incriminate him, in violation of his Fifth Amendment right against self-incrimination. *Id.* at 101–02, 108 S.Ct. 2284. The Supreme Court rejected that argument, holding that as the sole custodian of the corporate records, Braswell could be compelled to produce those records. *Id.* at 117–18, 108 S.Ct. 2284. The Court reasoned that although it was Braswell who would have to produce the records, he would do so in his capacity as a corporate officer, thus the act of producing the records would be a corporate act. *Id.* Because corporations have no Fifth Amendment rights, Braswell, in his capacity as a corporate officer, was required to produce the documents. *Id.*

■ The court's research has indicated that Judge Brown's application of the *Braswell* court's reasoning to this case was entirely proper. It has long been settled law that "the privilege against self-incrimi-

nation is a purely personal one, [thus] it cannot be used by or on behalf of any organization, such as a corporation." *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). Moreover, corporate officers cannot refuse to produce corporate records by invoking personal Fifth Amendment rights. *Wilson v. United States,* 221 U.S. 361, 377, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *see also United States v. Maxey & Co.,* 956 F.Supp. 823, 827 (N.D.Ind.1997) ("the law is clear that an individual cannot rely on a personal privilege of self-incrimination to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if those records might incriminate him personally"). In this case, Orphanou made the decision to incorporate the Companies. He now acts as an officer of those corporations. As a corporate officer, Orphanou will not be heard to assert the "purely personal" Fifth Amendment privilege against self-incrimination. *See White,* 322 U.S. at 699, 64 S.Ct. 1248; *Wilson,* 221 U.S. at 377, 31 S.Ct. 538. Judge Brown's decision not to issue a protective order sealing discovery from third parties was therefore not clearly erroneous, and this court will not overturn it.

### III. CONCLUSION

Having undertaken additional research on the applicable law, this court agrees with, and will not overturn, Magistrate Judge Brown's ruling from the bench that denied Orphanou's Motion to Stay or, in the Alternative, for Protective Order Sealing Discovery, and granted the FTC's Motion to Compel Production of Documents and Answers to Interrogatories. Orphanou shall produce the requested documents and evidence by April 18, 2005.

IT IS SO ORDERED.