**IN RE: Marisa GARCIA, Debtor.**

**Patrick S. Layng, United States Trustee, Plaintiff,**

v.

**Marisa Garcia, Defendant.**

**Case No. 14bk14023**
**Adversary No. 16ap00387**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Signed July 19, 2017

**Appearances**: Counsel to the United States Trustee: M. Gretchen Silver, Office of the United States Trustee, Chicago, IL

Attorneys for Debtor: Ariel Weissberg and Devvrat Sinha, Weissberg and Associates, Ltd., Chicago, IL Gregory K. Stern, Dennis E. Quaid, Monica C. O'Brien and Rachel S. Sandler, Gregory K. Stern P.C., Chicago, IL

SERVICE LIST Counsel to United States Trustee, M. Gretchen Silver, Esq., Office of The United States Trustee, 219 S Dearborn Street, Room 873, Chicago, IL 60604

Counsel to Debtor, Ariel Weissberg, Esq., Devvrat Sinha, Esq., Weissberg and Associates, Ltd., 401 S Lasalle, Suite 403, Chicago, IL 60605 and Gregory K. Stern, Esq., Dennis E. Quaid, Esq., Monica C. O'Brien, Esq., Rachel S. Sandler, Esq., Gregory K. Stern, P.C., 53 W Jackson Boulevard, Suite 1442, Chicago, IL 60604

Timothy A. Barnes, United States Bankruptcy Judge

## MEMORANDUM DECISION

The matter before the court is the Motion of Marisa Garcia (the "Debtor") to Stay Adversary Proceeding [Adv. Dkt. No. 24] (the "Motion"), which seeks to stay the above-captioned adversary case (the "Adversary"). The Adversary was commenced by the filing of the Complaint Objecting to Debtor's Discharge and for other Relief [Adv. Dkt. No. 1] (the "Complaint") by Patrick S. Layng, United States Trustee (the "U.S. Trustee"). In the Complaint, the U.S. Trustee alleged, *inter alia*, that the Debtor should be denied a discharge in her bankruptcy case, *In re Marisa Garcia*, 14bk14023 (Bankr. N.D. Ill. 2014) (Barnes, J.) (the "Bankruptcy Case"), due to alleged false oaths and concealment of the value of various personal and real properties during the Bankruptcy Case. In moving to stay the Adversary, the Debtor alleges, pending resolution of a parallel criminal investigation, that continuing with the Adversary might subject her to conflicting choices—namely to invoke a Fifth Amendment privilege against self-incrimination and the possible negative inferences arising therefrom, or to defend the Adversary and risk information therein being used in a criminal indictment.

After full consideration of the matter, the court finds that the relevant standards as applied to the facts herein as they presently exist weigh in favor of continuing with the Adversary. As such, the motion to stay is DENIED without prejudice.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern

District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). In such matters, the court has constitutional authority to enter final orders, as "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also Zerand–Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). The Complaint is based on section 727(a) of the Bankruptcy Code. Section 727 is unequivocally a bankruptcy cause of action. As one bankruptcy court explains, "[b]ecause the issue of whether a discharge should be revoked 'stems from the bankruptcy itself' ... the Court also has the constitutional authority to enter a final order[.]" *McDermott v. Davis* (*In re Davis*), 538 B.R. 368, 370 (Bankr. S.D. Ohio 2015) (citations omitted). This includes an order staying the action itself. *See Levey v. Systems Div., Inc.* (*In re Teknek, LLC*), 563 F.3d 639, 648 (7th Cir. 2009) (recognizing a bankruptcy court's power to grant or deny a motion to stay an adversary proceeding).

Accordingly, determination of the Motion is within the scope of the court's jurisdiction and constitutional authority.

## PROCEDURAL HISTORY

The Debtor filed the Motion on April 13, 2017. The U.S. Trustee filed the United States Trustee's Response to Defendant's Motion to Stay Adversary Proceeding [Adv. Dkt. No. 33] (the "Response") on May 11, 2017, arguing that there was no basis for a stay. The Debtor filed her Reply in Support of Her Motion to Stay Adversary Proceeding [Adv. Dkt. No. 35] (the "Reply") on May 26, 2017. The Debtor and the U.S. Trustee argued their positions at a hearing that took place on June 7, 2017 (the "Hearing").

In considering the Motion, the court has reviewed the Motion itself, the Response and the Reply, and all filings with respect to the foregoing. The court has also considered each of the parties' arguments at the Hearing. Though the foregoing items do not constitute an exhaustive list of the filings in the case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## BACKGROUND

On April 15, 2014, the Debtor commenced the Bankruptcy Case by filing a Voluntary Petition for Relief under chapter 7 of the Bankruptcy Code. *See* Voluntary Pet. for Relief [Dkt. No. 1].

On the basis of the Debtor's various schedule amendments submitted to the court and her various testimonies during her meetings of creditors as required by 11 U.S.C. § 341(a) (the "341(a) Meetings"), the U.S. Trustee, on June 28, 2016, filed the Complaint consisting of four counts against the Debtor. Compl., at pp. 8–12. The Complaint sought denial of the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A), (a)(4) and/or (a)(5), as the Debtor allegedly concealed her interest in personal property from the U.S. Trustee and her creditors, made numerous statements under oath that were knowingly false, and could not explain how she came to own the properties or business interests

for which she was seeking a discharge.[1] Compl., at pp. 10–12.

The Debtor filed an answer to the Complaint on September 19, 2016, Answer and Affirmative Defense to Counts II, III, IV of the Complaint Objecting to Discharge [Adv. Dkt. No. 16], and entered into a Joint Discovery Plan on December 9, 2016. Joint Discovery Plan [Adv. Dkt. No. 21]. On April 7, 2017, however, at her deposition for this Adversary, the Debtor asserted her privilege against self-incrimination under the Fifth Amendment of the United States Constitution. *See* Resp., at p. 6.

Thereafter, on April 13, 2017, the Debtor brought this Motion seeking to stay the Adversary. In the Motion, the Debtor alleges that, on November 15, 2015, she was approached by a representative of the Federal Bureau of Investigation who informed her of an ongoing criminal investigation regarding alleged bankruptcy fraud committed during her 341(a) Meetings in the Bankruptcy Case. Shortly thereafter, the United States Attorney's Office for the Northern District of Indiana ("U.S. Attorney") allegedly began communications with the Debtor's criminal defense counsel with respect to alleged inaccuracies in her Schedule B filed in her Bankruptcy Case. Mot., at pp. 4–5.

The Debtor further alleges that, in May 2016, the U.S. Attorney sent her and her attorney a draft document entitled "Waiver of an Indictment and Waiver of Venue" (the "Waiver"). Reply, at p. 3–4. The Waiver apparently included with it a draft of an

information as well as a plea agreement. *See* Tr. 5–8, June 7, 2017 [Adv. Dkt. No. 40]. The Debtor clarified at the Hearing that the Waiver was given to the Debtor's bankruptcy counsel through the Debtor's criminal counsel, who in turn received the Waiver from the Debtor's husband's criminal counsel.[2] *See* Tr. 11–12, 24, June 7, 2017 [Adv. Dkt. No. 40]. When the Debtor did not sign the Waiver, the U.S. Attorney allegedly informed her criminal counsel that the case "will be transferred to the Northern District of Illinois for prosecution." Reply, at p. 4. Later, on June 16, 2016, the Debtor's husband and son were indicted in a separate case involving mail fraud in a scheme to defraud and obtain money from the Department of Housing and Urban Development. Mot., at p. 5; Resp., at p. 5. The Debtor and U.S. Trustee agree that the indictment of the Debtor's son and husband is unrelated to the Debtor's Bankruptcy Case, the alleged fraud in the Waiver, or this Adversary. *See* Tr. 12, 30, June 7, 2017 [Adv. Dkt. No. 40]; Resp., at p. 5; Mot., at p. 5.

The Debtor argues that, pending resolution of the presumed parallel criminal investigation against her, continuing with the Adversary might subject her to conflicting choices—namely to invoke a Fifth Amendment privilege against self-incrimination and the possible negative inferences arising therefrom, or to defend the Adversary and risk information therein being used in a criminal indictment. The Debtor therefore requests a six[3] month stay of the

---

1. The U.S. Trustee dismissed Count I on October 16, 2016. Order Voluntarily Dismissing Count I [Adv. Dkt. No. 18].

2. The court is left with the impression that the U.S. Attorney sent the draft Waiver to the Debtor's counsel's husband as a means of securing a plea agreement for the Debtor's husband's separate allegations regarding his scheme to defraud the Department of Hous-

ing and Urban Development, not necessarily as a true attempt to pursue the Debtor independently on the bankruptcy allegations. *See* Tr. 11–12, 25, 26, June 7, 2017 [Adv. Dkt. No. 40]; Resp., at p. 5.

3. The Debtor's Motion and Reply request a twelve-month stay, but the Debtor changed her request to six months at the Hearing on

Adversary so that she has an "ability to mount a defense" in an alleged, potential criminal case, "without effectively conceding [the Adversary] by being forced to continue to assert her Fifth Amendment Privilege." Mot., at p. 9; *see also* Reply, at p. 10 (arguing that a stay will allow any threat of criminal prosecution to pass).

## DISCUSSION

The issue before the court is one that could, potentially, arise in almost any section 727 adversary. Surprisingly, however, this appears to be an issue of first impression in the published bankruptcy case law in this District.

The Debtor argues that she is in a peculiar position wherein she is the subject of a parallel criminal investigation for the same allegations she faces in the section 727 Adversary. The Debtor further argues that, pending resolution of the parallel criminal investigation, continuing with the Adversary might subject her to conflicting choices—namely to invoke a Fifth Amendment privilege against self-incrimination and the possible negative inferences arising therefrom, or to defend the Adversary and risk information therein being used in a criminal indictment.

The U.S. Trustee, in response, argues that there is no basis for a stay as there is no actual pending criminal case and the Debtor's request is simply a delay tactic. The U.S. Trustee observes that a charge for bankruptcy fraud under title 18 is nearly identical to a cause of action under section 727. *Compare* 11 U.S.C. § 727 *with* 18 U.S.C. § 152. The Debtor is essentially no different from any other debtor facing a cause of action for fraud under section 727 because, as the causes of actions are so similar, any potential debtor could be faced with a pending investigation for bankruptcy fraud under title 18. Tr. 26–27, June 7, 2017 [Adv. Dkt. No. 40].

Despite this, the Debtor argues that factors analyzed by previous courts make a stay appropriate in this Adversary.

Because these issues are ones of a first impression for this court, the court will examine in detail the factors and relevant case law of each party. First, however, the court will examine its authority to stay an adversary proceeding.[4]

### A. The Court's Power to Stay Proceedings

The Supreme Court has made clear that all courts have the inherent power to stay civil cases before them. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A "court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[ ] to require such action[.]'" *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (*quoting United States v. Kordel*, 397 U.S. 1, 12 n.27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)).

> The ultimate question, therefore, is whether the court should ... avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving

June 7, 2017. *See* Tr. 13, 20, 21, June 7, 2017 [Adv. Dkt. No. 40].

4.  Although the parties disagree as to whether the Debtor waived her Fifth Amendment privilege by participating in discovery in the Adversary, the parties have mutually agreed to table this argument until the court has decided the Motion. *See* Tr. 13, June 7, 2017 [Adv. Dkt. No. 40]. As such, the court will not address the issue of waiver.

their Fifth Amendment rights and testifying in the civil proceedings.

*Cruz v. Cty. of DuPage*, Case No. 96 C 7170, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997); *see also Brock v. Tolkow*, 109 F.R.D. 116, 121 (E.D.N.Y. 1985) (when a litigant may have to choose between invoking a Fifth Amendment privilege in a civil case to avoid answering questions which could implicate him in a parallel criminal prosecution, such a stay is appropriate for consideration).

■ It is not unconstitutional, however, for the court to continue such a proceeding, thus requiring a litigant to choose between invoking her Fifth Amendment privilege or to answer questions in a civil proceeding even if those answers could implicate her in a parallel criminal prosecution. *See Dresser*, 628 F.2d at 1375–76 (*citing Baxter v. Palmigiano*, 425 U.S. 308, 318–19, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)); *see also Kordel*, 397 U.S. at 12, 90 S.Ct. 763 (continuing a civil proceeding in light of a parallel criminal proceeding is neither unconstitutional nor improper).[5]

In *Kordel*, a company's officers faced a similar situation when their business was served with a civil process which the officers needed to answer. *See generally Kordel*, 397 U.S. at 3–12, 90 S.Ct. 763. When the officers discovered that the United States Attorney was preparing a criminal case against them, they moved to stay the civil proceedings until after disposition of the criminal proceedings against them. *Id.* at 3–4, 90 S.Ct. 763. The district court denied this motion. *Id.* at 5, 90 S.Ct. 763.

The officers were later indicted and convicted in criminal court, in part based on evidence given in the civil case. *Id.* at 5–7, 90 S.Ct. 763. The officers appealed their criminal convictions, ultimately on *certiorari* to the Supreme Court. *Id.* at 3, 90 S.Ct. 763. They argued that use of the civil discovery process to compel answers to interrogatories that could later be used to build the government's case in a parallel criminal proceeding "reflected such unfairness and want of consideration for justice" as to require reversal. *Id.* at 11, 90 S.Ct. 763. The Supreme Court did not agree. *Id.* at 10, 90 S.Ct. 763. The Court noted that the government had not brought the civil action "solely to obtain evidence for its criminal prosecution," or without notice to the defendants that it contemplated a criminal action. *Id.* at 11–12, 90 S.Ct. 763. Because the civil action was brought on its own basis, and not on the basis of obtaining a criminal indictment, the Court found that the officers had no reason to fear "prejudice from adverse pretrial publicity or other unfair injury," nor found any other circumstances wherein the parallel proceedings would be unconstitutional or improper. *Id.*

Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions "when the interests of justice seem to require such action, sometimes at the request of the prosecution, ... sometimes at the request of the defense[.]" *Id.* at 12 n.27, 90 S.Ct. 763. The

---

**5.** At the Hearing, the Debtor's counsel proposed, as the court understands his argument, that *Arndstein v. McCarthy*, also a Supreme Court case, protects the Debtor from having to plead a Fifth Amendment privilege in a bankruptcy discovery process. *See* Tr. 28–29, June 7, 2017 [Adv. Dkt. No. 40]; *see also Arndstein*, 254 U.S. 71, 73, 41 S.Ct. 26, 65 L.Ed. 138 (1920). Although the court agrees

that *Arndstein* held that the Bankruptcy Act did not vitiate the protections afforded persons under the Fifth Amendment, the court can find nothing in *Arndstein* compelling a court to protect a debtor from what follows from asserting those protections. The Debtor may still have to choose between invoking her Fifth Amendment privilege and answering discovery.

Debtor in this case contends that such interests exist.

## B. The Factors Offered by the Parties

The Debtor and the U.S. Trustee offer competing factors for the court to weigh in determining if a stay is appropriate in this Adversary. The Debtor cites factors utilized by the unpublished *Cruz* case from the District Court to assist the court in determining if a stay is just and necessary and should be applied here. 1997 WL 370194. The factors are (1) whether the two actions involve the same subject matter, (2) whether the two actions are brought by the government, (3) the posture of the criminal proceeding, (4) the effect on the public interests at stake if a stay were to be issued, (5) the interest of the plaintiffs in proceeding expeditiously with this litigation and the potential prejudice to plaintiffs of a delay and (6) the burden that any particular aspect of the proceedings may impose on defendants. *Id.* at *2.

The U.S. Trustee, in response, cites essentially identical factors from another District Court case. *Chagolla v. City of Chicago*, 529 F.Supp.2d 941, 945 (N.D. Ill. 2008). As the factors in *Cruz* and *Chagolla* use the same "balancing of interests" test, for the purpose of this analysis, the court will paraphrase the factors cited by the earlier, more frequently cited, *Cruz* court and analyze them as used in that case.

The so-called "balancing of the interests" test adopted by the *Cruz* court originated with *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53 (E.D. Pa. 1980), and was later refined by *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134 (S.D.N.Y. 1995). The *Cruz* factors match the factors listed in *Pipefitters* with the exception of two: *Pipefitters* analyzes the "interests of the courts" whereas *Cruz* does not; and *Cruz* analyzes "whether the two actions are brought by the government" whereas *Pipefitters* does not. *Compare Pipefitters*, 886 F.Supp. at 1139 *with Cruz*, 1997 WL 370194, at *2. Nonetheless, the evolution of these factors stems from *Pipefitters* and *Golden Quality. See Alcala v. Texas Webb Cty.*, 625 F.Supp.2d 391, 398–99 (S.D. Tex. 2009) (examining the evolution of the *Golden Quality* factors). These factors have been heavily relied upon and cited to the courts both within and without this District. *See, e.g., St. Martin v. Jones*, Case No. Civ. 08-1047, 2008 WL 4534398, at *1 (E.D. La. Oct. 2, 2008); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F.Supp.2d 758, 762 (W.D. Tex. 2008); *Admiral Ins. Co. v. Federal Security, Inc.*, Case No. 94 C 5649, 1996 WL 139243, at *1–2 (N.D. Ill. Mar. 26, 1996) (Magistrate's Report and Recommendation) (listing and weighing similar factors); *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D. Ill. 1993) (*citing White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987)).

Although the majority of cases in this Circuit and elsewhere find a criminal indictment necessary to justify a stay in a parallel civil proceeding and here no such indictment apparently exists, the court finds it nonetheless instructive to consider the factors outlined in *Cruz* and weigh them against the present facts of this case. If such factors, in cases where the actions coexist and the risks are therefore less attenuated, militate against a stay, no further inquiry should be needed. The court thus addresses each of the *Cruz* factors in turn:

1. *Whether the Civil and Criminal Matter Involve the Same Subject* (Cruz *Factor 1*)

If there is significant topical overlap between civil and criminal matters,

"the civil case might undermine the defendant's Fifth Amendment privilege against self-incrimination by expanding rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), by exposing the basis of the defense to the prosecution in advance of criminal trial, or by prejudicing the criminal case through other means." *Alcala*, 625 F.Supp.2d at 400; *see also Dresser*, 628 F.2d at 1376 (same). If the subject matter overlaps to a significant degree, a defendant could face a catch–22 choice between asserting her Fifth Amendment privilege and effectively defending against the adversary complaint. *Pipefitters*, 886 F.Supp. at 1139.

When an indictment has been handed down, the court can easily compare the terms of the indictment with the alleged facts in the adversary. For example, one bankruptcy court declined to stay an adversary proceeding because it involved different actions than those set forth in the indictment, which had no nexus to the fraudulent transfer claims in the adversary complaint. *See Mendelsohn v. Gordon (In re Who's Who Worldwide Registry, Inc.)*, 197 B.R. 193, 197–98 (Bankr. E.D.N.Y. 1996). Similarly, another bankruptcy court stayed an adversary proceeding stating that "wrongful conduct alleged in the adversary proceeding is sufficiently similar to the allegations contained in the indictment to warrant a stay[.]" *O'Connell v. Wells Fargo Bank (In re Julmice)*, 458 B.R. 657, 662–64 (Bankr. E.D.N.Y. 2011).

Prior to an indictment, however, whether issues will overlap is a mere "matter of speculation." *United States ex rel. Shank v. Lewis Enters., Inc.*, Case No. 04-CV-4105-JPG, 2006 WL 1064072, at *2 (S.D. Ill. Apr. 21, 2006); *see also Cruz*, 1997 WL 370194, at *2. Because there is no criminal proceeding, indictments, or case with which to compare to the Complaint, this factor weighs in favor of continuing with

the Adversary. "The fact that the Defendant has not been indicted is significant[.]" *Shank*, 2006 WL 1064072, at *3.

The court agrees with the U.S. Trustee that, absent an actual criminal matter brought to a court, there is always the risk a section 727 cause of action in an adversary can give rise to a criminal action under title 18. Any allegations or investigations under 18 U.S.C. § 152 would, by the overlap in language, match an allegation under section 727. The language in title 18 states, for example, that a person who "knowingly and fraudulently conceals from a … trustee … under title 11 … any property belonging to the estate of a debtor" shall be fined, imprisoned, or both. 18 U.S.C. § 152. Compare to section 727, which states that the court shall grant a discharge unless "the debtor … has transferred, removed … or concealed" property of the debtor or of the estate. 11 U.S.C. § 727(a)(2).

Other courts have recognized the similarity in the language and purpose of the two statutes. *See, e.g., Taylor v. Spiers (In re Spiers )*, Case No. 11-32345, Adv. No. 12-3211, 2013 WL 319785, at *6 (Bankr. W.D.N.C. Jan. 28, 2013) ("[I]t is no surprise that [section 727] punishes debtors who attempt to misuse the bankruptcy process … [leading] to loss of the discharge. *See* § 727(d). Such actions are also crimes. *See* 18 U.S.C. 152, et. seq. [sic]"); *M.J. Pipeline Inspection v. Allison (In re Allison )*, Case. No. 03-46458-DML-7m Adv. No. 03-4469, 2004 WL 3622637, at *3 (Bankr. N.D. Tex. Sept. 20, 2004) ("section 727(a)(3) has a cognate in the Criminal Code, *i.e.,* 18 U.S.C. § 152(8)."); *Riumbau v. Colodner (In re Colodner )*, 147 B.R. 90, 94 (Bankr. S.D.N.Y. 1992) ("Generally, the wrongful acts proscribed under 11 U.S.C. § 727(a)(4) are parallel to the actions that are defined as bankruptcy crimes. *See* 18 U.S.C. § 152."). If a court were to stay a

section 727 adversary simply because of an allegation of a criminal investigation or a mere threat of a criminal indictment under 18 U.S.C § 152, nearly every section 727 adversary could be stayed.

The Debtor argues that her case is unique as the U.S. Attorney went beyond mere investigation by presenting the Debtor or the Debtor's husband with the Waiver. *See* Mot., at pp. 3–10. Though unproven, the court accepts that the Waiver was delivered as alleged for the purposes of deciding the Motion.

Even so, the Debtor's argument still fails. The only pending criminal action is factually distinct from the facts in this Adversary. The alleged investigation has not, to the court's knowledge, proceeded beyond the mere threat. The draft Waiver is simply a more elaborate threat, but a threat nonetheless.

It is worth reemphasizing that there is always a risk that a cause of action under section 727 may also give rise to a criminal action under title 18. Even if it is reasonable to assume the fraudulent conduct detailed in the Complaint can serve as a basis for criminal prosecution, the court agrees with the court in *Shank* that "whether the proceedings *will* overlap is matter of speculation." *Shank*, 2006 WL 1064072, at *4. Allowing a stay could open the floodgates to allow any such adversary to be stayed.

As a result, this factor remains in favor of continuing with the Adversary.

2. *Whether the Criminal and Civil Proceedings Are Both Brought by the Government* (Cruz *Factor 2*)

The existence of the government as a party in both the civil and criminal matters gives rise to a risk that it may take advantage of the broader rules of civil discovery to obtain information for the criminal prosecution. "If the governmental entity that initiated the parallel criminal prosecution or investigation is a party in the civil case, there is a concern that it may use the civil discovery process to circumvent limitations on discovery in criminal proceedings." *Chagolla*, 529 F.Supp.2d at 946;[6] *see also Dresser*, 628 F.2d at 1376; *F.T.C. v. Pac. First Ben., LLC*, 361 F.Supp.2d 751, 756 (N.D. Ill. 2005) (same). As one court stated:

> [I]n cases where both the criminal and the civil actions are brought by the government ... there is a danger that the government may use the civil discovery processes to obtain evidence and information for a criminal prosecution and thereby, to some extent at least, circumvent the 5th Amendment rights against self-incrimination of the defendants. These cases pose the most compelling argument for a stay of the civil discovery process until the termination of the criminal investigation or prosecution.

*Admiral*, 1996 WL 139243, at *1. Despite the overlap in the statutes, the government is not always the plaintiff in such section 727 adversaries. When it is—as it is in the case at bar—this issue comes to the forefront.

The U.S. Trustee argues that the U.S. Attorney is located in the Northern District of Indiana whereas the U.S. Trustee in this Adversary is located in the Northern District of Illinois. Maybe so, but each are under the ultimate umbrella of the

---

**6.** The use of the term "governmental entity" in *Chagolla* perhaps explains the U.S. Trustee's choice to cite to *Chagolla* instead of *Cruz*, which speaks more broadly in terms of the "government." *Cruz*, 1997 WL 370194, at *2–3. If so, that reliance was misplaced. *Chagolla* relies on *Cruz* in its analysis of the factor. Any narrowing of the concept by adding the term "entity" appears inadvertent.

Department of Justice. The U.S. Trustee admits as much. *See* Resp., at p. 7.

Here, the court agrees with the Debtor that the focus is not on the agency advancing the matter, but on the litigant itself, which is the federal government. Having the government involved in the Adversary and the alleged investigation makes this risk greater, regardless of the overall speculative nature of the criminal investigation.

Even though the existence of a criminal matter here is merely speculative, this risk is compelling. *See 140 Grant Avenue Assocs., LLC v. Garsia (In re Garsia )*, Case No. 09-22233 DHS, Adv. No. 09-02667, 2011 WL 1045295, at \*3 (Bankr. D.N.J. Mar. 17, 2011) (finding that a pre-indictment stay "may be warranted" if the government is conducting an "active parallel criminal investigation"); *Admiral*, 1996 WL 139243, at \*1 (finding that a stay is warranted when both cases are brought by the government). Regardless of how independent the U.S. Trustee may be from the U.S. Attorney, having the federal government involved twice over weighs in favor of a stay.

3. *Posture of the Criminal Proceeding* (Cruz *Factor 3*)

This factor asks the court to examine the stage of criminal prosecution that the civil defendants have faced. If, for example, the criminal proceeding were actively in trial, or if the defendants facing the civil suit were actively having to defend themselves in a parallel criminal proceeding, then "the overall posture of the criminal proceedings [would suggest] that a stay of discovery is appropriate." *Cruz*, 1997 WL 370194, at \*3. "In the cases in which a motion to stay has been denied, there has usually only been a threat of indictment of the civil litigants." *Id.*; *see also Chagolla*, 529 F.Supp.2d at 946 ("[t]he fact some

defendants face only the threat of criminal charges, and no actual charges as yet, weighs against entry of a stay"). Here, both *Cruz* and *Chagolla* clearly govern the outcome. Without an actually pending criminal proceeding, this factor favors denying a stay.

4. *The Effect of Granting or Denying a Stay on the Public Interest* (Cruz *Factor 4*)

This is, perhaps, the most interesting factor to consider here. Given the potential for frequent overlap, public policy is clearly implicated. In examining the public policies at play, the court sees four interests to weigh. The public has an interest in the prompt disposition of all litigation, both civil and criminal. *See Chagolla*, 529 F.Supp.2d 941, 946–47. On the one hand, in civil matters, delay impairs the public interest in a "prompt disposition of civil litigation." *Id.* at 946; *see also* Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471–82 (listing district court requirements to "ensure just, speedy, and inexpensive resolutions of civil disputes"). On the other, in criminal matters, the public has an interest, however, in "ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla*, 529 F.Supp.2d at 947. These two interests will be considered together, below.

The public also has an interest in ensuring that constitutional protections are not weakened. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (*quoting Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)). Last, the public has an interest in seeing that bankruptcy protections are afforded only to "honest but unfortunate" debtors. *Cora v. Jahrling (In re Jahrling )*, 816 F.3d 921, 924 (7th Cir. 2016).

As to the first two interests (the countervailing prompt resolution concerns), the court finds that, in the absence of a speedy trial mandate, because no criminal matter has yet been commenced against the Debtor, these cancel one another out. Neither predominates. As to the third (the preservation of constitutional protections), the Supreme Court already balanced this factor when it determined that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions ... the Amendment does not preclude the inference where the privilege is claimed by a party to a Civil cause." *Baxter*, 425 U.S. at 318, 96 S.Ct. 1551 (internal quotation marks omitted); *see also Brock*, 109 F.R.D. at 119 (E.D.N.Y. 1985) (*citing Baxter*, 425 U.S. at 318–319, 96 S.Ct. 1551) ("it is not unconstitutional to force a litigant to choose between invoking the Fifth Amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution.").

Last, as to the bankruptcy interest (protecting only honest but unfortunate debtors), absent something more, it simply cannot be the case that protections afforded an allegedly fraudulent debtor outweigh the need to protect creditors and the bankruptcy system as a whole. As noted above, if that were the case, nearly all adversaries under section 727 would be stayed. Debtors would be entitled to hold their creditors in abeyance indefinitely while the allegations of misconduct run their course. To do so would frustrate the public interest in expeditious resolution of bankruptcy proceedings.

Here, the Debtor's bankruptcy petition was filed over three years ago and the Debtor has had the benefit of an automatic stay for that period. The Adversary should continue to allow a prompt resolution of all issues affecting the Bankruptcy Case.

5. *The Interest of the Adversary Plaintiff in Proceeding Expeditiously and the Potential Prejudice the Adversary Plaintiff May Suffer from a Delay* (Cruz *Factor 5*)

Plaintiffs in all cases have a strong interest in proceeding expeditiously with their suits. *See Challoga*, 529 F.Supp.2d at 947. Here, the U.S. Trustee filed his Complaint almost a year ago and the close of discovery was fast approaching when the Debtor filed her Motion seeking the stay.

As with all litigants, the U.S. Trustee has an interest in completing that discovery before time makes certain information elusive. The Debtor argues that the "Trustee's evidence is based on schedules, transcripts, and other stable physical evidence which renders degradation a non-factor." Reply, at p. 9. If that were true, the assertion of the privilege would be superfluous. In fact, the testimony of a Debtor as to intent is the most frequent material fact preventing section 727 matters from being resolved in summary judgment. The U.S. Trustee has a vested interest in obtaining at trial the full, truthful and unrehearsed testimony of the debtor regarding these issues. Delay works against this goal.

The arguments in favor of imposing a stay existed as of the date the U.S. Trustee filed the Complaint but were not made until the 11th hour. The assertion of the privilege at such a late stage prejudices the U.S. Trustee, who has already invested much time and effort in the Adversary. The late assertion of the privilege strikes more as a litigation strategy than anything else.

The Debtor argues that "the court must balance the right of an expeditious proceeding with the [Debtor's] interest in presenting a full and fair defense." Reply, at p. 9. Extrinsically, that concern is already addressed in the other factors considered

here. Intrinsically, that balancing takes place in every case, not just ones such as these.

If the court were to stay the Adversary, progress on the Adversary would cease and not begin again for an indefinite number of months or years. Given this uncertainty, "there is a real possibility that this action will be stayed for no reason." *Shank*, 2006 WL 1064072, at *5. This factor weighs against a stay.

6. *The Burden That Any Particular Aspect of This Adversary Proceeding May Impose on the Defendant if a Stay Is Denied* (Cruz *Factor 6*)

█ The Debtor argues that an abeyance of six months would alleviate the burden of having the Debtor participate in this Adversary concurrently with a criminal case. The Debtor has, however, done little to substantiate that burden. As another court observed, debtors must "explain, for example, why they cannot participate in this case while also selectively invoking their Fifth Amendment right against self-incrimination to specific questions during discovery as necessary." *CMB Export, LLC v. Atteberry*, Case No. 4:13 CV-04051 SLDJEH, 2014 WL 4099721, at *4 (C.D. Ill. Aug. 20, 2014). While it is undoubtedly true that concurrent matters present more of a burden, the court has nothing before it but conjecture that the Debtor is overtaxed at this time. This is so even with the pending, unrelated criminal matter involving the Debtor's family. The burden of the Debtor's husband's and son's cases is theirs to bear, not the Debtor's. This factor is at best neutral.

C. A Criminal Indictment As Prerequisite to a Stay

While the *Cruz* factors appear to militate in favor of continuing the Adversary, they are not unanimously in the U.S. Trustee's favor. Absent nothing more, the court would nevertheless be inclined to deny the Motion. Affording the Debtor the widest benefit of any doubt, however, necessitates further inquiry into the Debtor's alleged circumstances. While the court has, at points above, attempted to consider these, they are worth revisiting here. In so doing, the court is faced with one simple but crucial question: what, if anything, should change given the uncertain nature of the Debtor's alleged criminal investigation? Both *Cruz* and *Chagolla*, after all, share one crucial point in common: each case addresses circumstances where both civil and parallel criminal actions are pending, not merely threatened. *See Cruz*, 1997 WL 370194, at *1 (where seven defendants were under parallel civil proceedings and criminal indictments); *Chagolla*, 529 F.Supp.2d at 948 (where the four defendants' criminal indictments weighed in favor of granting a stay).

Here, the key question for the court is instead whether a debtor, *not* indicted in a parallel criminal proceeding, should be granted a stay in a civil proceeding.

As noted at the outset, the added uncertainty would seem to disfavor the Debtor. But this is worth considering further. While the parties offer nothing on this point, the court is aware of another District Court case where it was observed that the parties "do not supply, and the Court does not find, any authority addressing the precise situation in the instant case, i.e., where parties in a civil proceeding, who are not facing criminal prosecution, seek a stay[.]" *Bd. of Trs. of Ironworkers Loc. No. 498 Pension Fund v. Nationwide Life Ins. Co.*, Case No. 04 C 821, 2005 WL 711977, at *10 (N.D. Ill. Mar. 28, 2005). As in the instant case, the defendants in *Ironworkers* had not been indicted in any criminal proceeding. That court therefore had to consider whether

the traditional factors should be modified. *See id.* This court will do the same.

■ In regard to the subject (*Cruz* Factor 1), courts generally decline to impose a stay where the defendant is under mere criminal investigation, but has yet to be indicted. *See, e.g., Fresenius Med.*, 571 F.Supp.2d at 763 (*citing Shank*, 2006 WL 1064072, at *3) ("[Defendant] has not been indicted, though he is the subject of a criminal investigation. Accordingly, that Court finds that this factor weighs against a stay."); *Shank*, 2006 WL 1064072, at *3 ("Because of the prematurity of the Fifth Amendment concerns and the indefinite nature of a stay based on a pending indictment, among other reasons, the weight of authority suggests that a stay is generally not appropriate before indictment."); *Pac. First*, 361 F.Supp.2d at 755 (a defendant is not entitled to stay of discovery when an indictment has not been handed down); *Ironworkers*, 2005 WL 711977, at *10 (distinguishing *Cruz* when the defendants "who are seeking a stay have not been indicted and there is no indication that they will be indicted"); *In re CFS*, 256 F.Supp.2d 1227, 1237 (N.D. Okla. 2003) (*citing Sterling Nat'l. Bank v. A–1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001)) (same). *But see Brock*, 109 F.R.D. at 119 (staying discovery during a pending criminal investigation when there was a real and appreciable risk of self-incrimination).

As one court stated: "pre-indictment motion[s] to stay can be denied on this ground alone." *Citibank, N.A. v. Hakim*, Case No. 92 CIV 6233 (MBM), 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993). The court sees no reason to deviate from this precedent.

In regard to the posture of the criminal proceeding (*Cruz* Factor 2), although the Debtor has offered for *in camera* review draft documents showing a possible investigation by the U.S. Attorney, those documents are incomplete and the conclusions drawn from them are speculative, at best. They are also drafts only, over a year old at this point and how they were given to the Debtor is less than clear. The Debtor produced no evidence of an actual indictment and, in fact, stopped short of arguing the same.

In regard to both actions being brought by the government (*Cruz* Factor 3), the court's conclusion does not change. When the government threatens criminal proceedings while pursuing civil ones on the same topic, the danger exists. *United States v. All Meat & Poultry Prods.*, Case No. 02 C 5145, 2003 WL 22284318, at *2 (N.D. Ill. Oct. 3, 2003). Even without a criminal indictment, the court takes seriously the government's role in both the Adversary and in the alleged criminal investigation. Even without an indictment, this factor still favors a stay. *See Chagolla*, 529 F.Supp.2d at 946.

In regard to the interests of the public (*Cruz* Factor 4), again, the court's conclusions do not change. Because there is no ongoing formal criminal process to either impede the Debtor or benefit from this Adversary, there is no compelling reason under the guise of public policy to issue a stay. *See In re Mid–Atl. Toyota Antitrust Litig.*, 92 F.R.D. 358, 360 (D. Md. 1981) (because there has been no decision to prosecute criminal actions against the defendants, "there appears to be no public interest in the grant of a stay."); *Carroll v. Unicom AP Chem. Corp. (In re MGL Corp.)*, 262 B.R. 324, 330 (Bankr. E.D. Pa. 2001) (staying a trustee "in the exercise of his or her statutory duty to recover assets for creditors where the defendant is not even the target of a criminal investigation would not only be wrong for this case but would establish a precedent that would undermine the public interest in bankrupt-

cy proceedings."). The U.S. Trustee's bringing of the Adversary appears to be a choice made independent of a decision, if any, to pursue the Debtor criminally. The Adversary was clearly not brought to obtain evidence for a criminal proceeding against the Debtor.

In regard to the interests of the U.S. Trustee (*Cruz* Factor 5), risk of protracted, meaningless delay is even greater here, as no criminal matter has yet or may ever be commenced. As the *Admiral* court stated: "Where an indictment has not yet been returned or where there is no ascertainable time period within which the criminal prosecution is likely to be concluded, a stay of discovery in civil proceedings is more problematic." 1996 WL 139243, at *1.

Last, in regard to the interests of the Debtor (*Cruz* Factor 6), the court finds that the Debtor's concern of a criminal indictment is too speculative in nature. Nothing clearly establishes a real and present, defined risk of prosecution.

As a result, the court's previous conclusion does not change. A stay of the Adversary at this time is not warranted.

## CONCLUSION

The court finds that the equities balance against staying the Adversary. The fact that the Debtor has not been indicted in any criminal proceeding is key. As that may change, the court therefore DENIES the Motion without prejudice. Should the Debtor be indicted, she may again move the court for a stay of these proceedings if cause to do so arises.

## ORDER

This matter comes before the court on the Motion to Stay Adversary Proceeding [Adv. Dkt. No. 24] (the "Motion"), brought by Marisa Garcia (the "Debtor") in the above-captioned adversary case; the court having jurisdiction over the subject matter and the parties having appeared at the hearing that occurred on June 7, 2017 (the "Hearing"); the court having considered the Motion, the filings with respect thereto, and each of the parties' arguments at the Hearing, and as further set forth in a Memorandum Decision issued concurrently herewith wherein the court finds that the Motion is not well taken;

NOW, THEREFORE, IT IS HEREBY ORDERED:

The Motion is DENIED without prejudice to the Debtor's ability to reassert the request, if appropriate, should the circumstances underlying the request have changed materially so as to establish grounds for the relief requested.